[Cite as *State v. Wright*, 2019-Ohio-5201.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State of Ohio, | : | |
| Plaintiff-Appellee, | : | |
| | | No. 18AP-770 |
| v. | : | (C.P.C. No. 17CR-4650) |
| Michael A. Wright, | : | (REGULAR CALENDAR) |
| Defendant-Appellant. | : | |

D E C I S I O N

Rendered on December 17, 2019

**On brief:** *Ron O'Brien*, Prosecuting Attorney, and *Barbara A. Farnbacher*, for appellee.

**On brief:** *The Law Offices of Thomas F. Hayes*, LLC, and *Thomas F. Hayes*, for appellant.

APPEAL from the Franklin County Court of Common Pleas

SADLER, J.

{¶ 1} Defendant-appellant, Michael A. Wright, appeals from a judgment of the Franklin County Court of Common Pleas, convicting him of improperly discharging a firearm at or into a habitation, in violation of R.C. 2923.161; discharging a firearm on or near a prohibited premises in violation of R.C. 2923.162; tampering with evidence, in violation of R.C. 2921.12; and attempted having a weapon while under disability, in violation of R.C. 2923.02. For the reasons that follow, we affirm.

## I. FACTS AND PROCEDURAL HISTORY

{¶ 2} This case arises out of a drive-by shooting at Salvatore Gaetano's residence located at 2242 Union Avenue in Columbus, Ohio, on August 12, 2017. Columbus Police Officer Harry Brian Dorsey testified that he was on patrol on Sullivant Avenue near

Whitethorne Avenue when, at approximately 11:30 p.m., he heard several gunshots ring out followed by a slight pause, and then several more gunshots. Almost immediately after the second set of shots was fired, Dorsey heard a loud crashing sound. Dorsey responded by driving his cruiser to the area south of Sullivant and east of Whitmore and exiting his vehicle. Dorsey saw a tall, heavy set, black male wearing dark clothing running north into an alley before turning west and running through a neighborhood. Dorsey testified that the man had something in his hand, but he was unable to make it out.

{¶ 3} Though Dorsey lost sight of the man for a moment, he continued on foot to a residence located at 464 Whitethorne Avenue where he observed the same black male, later identified as appellant, standing on the front porch. Dorsey testified that the man was "blading" his body as if to conceal something from Dorsey. (Aug. 15, 2018 Tr. at 62.) According to Dorsey, appellant told him that someone had just taken a shot at him and pointed toward a white male, later identified as Gaetano, who was running west on Union Avenue. With the help of Officer Gerald Randal, who had also heard the gunshots and had just arrived at the scene, Gaetano was detained and placed in a police cruiser where he told the officers that someone had just shot at his house. Dorsey noticed a large number of shell casings in the street in front of Gaetano's home.

{¶ 4} As he was speaking with Gaetano, Dorsey observed a disabled Chevrolet Cruze that had crashed into a pole at Union Avenue near Butler Avenue. Dorsey believed this vehicle was associated with a person named Micah Harris because he had seen Harris driving that vehicle in the past. According to Dorsey, he approached a man by the name of Michael Cook, who was standing by the disabled vehicle. After speaking with Cook, Dorsey returned to the residence located at 464 Whitethorne Avenue. When Dorsey arrived at the residence located at 464 Whitethorne Avenue, appellant went inside the residence and refused to come out. After a brief stand-off, appellant came outside, and police took him into custody. Dorsey then observed an open wound on appellant's head. Dorsey testified that the wound resembled a grazing gunshot wound, but he acknowledged that appellant could have sustained the wound as a result of his vehicle colliding with the pole. Medics bandaged appellant's head wound at the scene, but appellant refused further treatment.

{¶ 5} Detective Mark Smith arrived at Gaetano's residence to investigate the incident. Smith interviewed Gaetano, who was still seated in a police cruiser when Smith

arrived. His partner, Detective Zimmer, interviewed Gaetano's daughter-in-law, who had an infant child with her. Smith described Gaetano's residence as a small one-story, single-family dwelling, and that the entire front of the home was riddled with bullet holes, some of which penetrated the outer wall windows. After viewing the scene, Smith contacted the Crime Scene Search Unit Columbus ("CSSU") to have the scene processed. CSSU subsequently processed the scene at the 464 Whitethorne Avenue residence, the residence at 242 Union Avenue, and the site of the vehicle crash.

{¶ 6} At trial, Smith testified about the evidence CSSU found at the scenes, including photographs showing bullet strikes both inside and outside Gaetano's residence and to his vehicle which was parked nearby. Eleven shell casings were collected from in front of the home, ten of which were fired from a .40-caliber firearm and one from a 9 mm firearm. Two shell casings were found inside the crashed vehicle as well as blood samples taken from the driver's side door and driver's seat. Evidence collected at the 464 Whitethorne Avenue address included two handguns, one with an extended magazine, found under or inside the cushions on the love seat. One of the firearms was a Glock model and the other was a Smith & Wesson.

{¶ 7} According to Smith, there was evidence of a small trail of blood from the back door of the home to the love seat where the two firearms and extended magazine were found. There was also a pair of blood-stained sweatpants at the same location and blood stains were found on the extended magazine. Miranda Aufiero from Ohio Bureau of Criminal Identification and Investigation ("BCI") testified that there was single-source DNA in the blood samples taken from the Glock firearm, the laser light for that firearm, the cushion of the love seat, and the driver's side front floor area of the crashed vehicle. These samples matched appellant's DNA. Aufiero admitted that a mixed DNA profile was also found on the Glock firearm and the laser light for that firearm, and that she could not obtain a useful DNA profile from the blood found on the Smith & Wesson firearm. Gunshot residue tests of appellant's hands were negative.

{¶ 8} Kelby Ducat from BCI testified that he tested the two weapons recovered from the Whitethorne Avenue residence and found them to be operable. With regard to the shell casings recovered from in front of Gaetano's home and inside the crashed vehicle, Ducat found that ten had been fired from the Glock and three from the Smith & Wesson.

Investigators did not remove and test any of the spent projectiles imbedded in either the exterior or interior of Gaetano's home.

{¶ 9} On August 23, 2017, a Franklin County Grand Jury indicted appellant on three counts of felonious assault, in violation of R.C. 2903.11, a felony of the second degree, one count of improperly discharging a firearm at or into a habitation, in violation of R.C. 2923.161, a felony of the second degree; one count of discharging a firearm on or near a prohibited premises, in violation of R.C. 2923.162, a felony of the third degree; one count of improperly handling a firearm in a motor vehicle, in violation of R.C. 2923.16, a felony of the fourth degree; one count of tampering with evidence, in violation of R.C. 2921.12, a felony of the third degree; and one count of having a weapon while under disability, in violation of R.C. 2923.13, a felony of the third degree. Each of the counts was accompanied by a three-year firearm specification. The three felonious assault charges and the charge of improperly discharging a firearm at or into a habitation were also accompanied by a five-year, drive-by firearm specification and a repeat violent offender specification.

{¶ 10} Prior to trial, plaintiff-appellee, State of Ohio, dismissed the three charges of felonious assault. Appellant then waived his right to a jury as to the charge of having a weapon while under disability. He subsequently pleaded guilty to the stipulated lesser-included offense of attempted having a weapon while under disability, in violation of R.C. 2923.02, a felony of the fourth degree.

{¶ 11} A Franklin County Jury found appellant guilty of improperly discharging a firearm at or into a habitation, in violation of R.C. 2923.161; discharging a firearm on or near a prohibited premises, in violation of R.C. 2923.162; improperly handling a firearm in a motor vehicle, in violation of R.C. 2923.16; and tampering with evidence, in violation of R.C. 2921.12. The jury found appellant guilty of the firearm specifications, and the trial court found appellant guilty of the repeat violent offender specification. Upon application of the prosecuting attorney, the trial court ordered a nolle prosequi as to the specification related to the charge of having a weapon while under disability, and the specification related to the charge of improperly handling a firearm in a motor vehicle.

{¶ 12} Prior to sentencing, the trial court ruled, pursuant to R.C. 2941.25, that Count 4 of the indictment charging appellant with improperly discharging a firearm at or into a habitation merged with Count 6 of the indictment charging appellant with

improperly handling a firearm in a motor vehicle. Appellee elected sentencing as to Count 4. In the trial court's September 10, 2018 judgment entry, the trial court sentenced appellant to a term of imprisonment of 8 years for improperly discharging a firearm at or into a habitation, consecutive to a 3 year firearm specification, a 5-year drive-by firearm specification, and a 1-year repeat violent offender specification, 2 years for discharging a firearm on or near a prohibited premises concurrent to a 3-year firearm specification and the sentence on Count 4, a 2-year concurrent sentence for tampering with evidence, and a consecutive 1-year sentence for attempted having a weapon while under disability, for an aggregate prison term of 18 years

{¶ 13} Appellant timely appealed to this court from the September 10, 2018 judgment entry.

## II.  ASSIGNMENTS OF ERROR

{¶ 14} Appellant assigns the following as trial court error:

> [1.]  The convictions are not supported by sufficient evidence and contrary to the manifest weight of the evidence presented at trial.

> [2.]  The trial judge failed to merge Count 5 and Count 6.

## III.  LEGAL ANALYSIS

### A. Appellant's first assignment of error

{¶ 15} In his first assignment of error, appellant argues that the convictions are not supported by sufficient evidence and against the manifest weight of the evidence. We disagree.

{¶ 16} Sufficiency of the evidence is a legal standard that tests whether the evidence is legally adequate to support a verdict. *State v. Kurtz*, 10th Dist. No. 17AP-382, 2018-Ohio-3942, ¶ 15, citing *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997). Whether the evidence is legally sufficient to support a verdict is a question of law, not fact. *Id.* "In determining whether the evidence is legally sufficient to support a conviction, ' "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." ' " *Kurtz*, at ¶ 15, quoting *State v. Robinson*, 124 Ohio St.3d 76, 2009-Ohio-5937, ¶ 34, quoting *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus. "A verdict will not be disturbed unless, after viewing the evidence in a light most

favorable to the prosecution, it is apparent that reasonable minds could not reach the conclusion reached by the trier of fact." *State v. Patterson*, 10th Dist. No. 15AP-1117, 2016-Ohio-7130, ¶ 32, citing *State v. Treesh*, 90 Ohio St.3d 460, 484 (2001).

{¶ 17} "In a sufficiency of the evidence inquiry, appellate courts do not assess whether the prosecution's evidence is to be believed but whether, if believed, the evidence supports the conviction." *Kurtz* at ¶ 16, citing *State v. Yarbrough*, 95 Ohio St.3d 227, 2002-Ohio-2126, ¶ 79-80 (evaluation of witness credibility not proper on review for sufficiency of evidence); *State v. Bankston*, 10th Dist. No. 08AP-668, 2009-Ohio-754, ¶ 4 (noting that "in a sufficiency of the evidence review, an appellate court does not engage in a determination of witness credibility; rather, it essentially assumes the state's witnesses testified truthfully and determines if that testimony satisfies each element of the crime"). "Further, 'the testimony of one witness, if believed by the jury, is enough to support a conviction.' " *Patterson* at ¶ 33, quoting *State v. Strong*, 10th Dist. No. 09AP-874, 2011-Ohio-1024, ¶ 42. *See also State v. Clark*, 10th Dist. No. 15AP-926, 2016-Ohio-5493, ¶ 25.

{¶ 18} "When presented with a manifest-weight challenge, an appellate court may not merely substitute its view for that of the trier of fact but must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses, and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *Patterson* at ¶ 34, citing *Thompkins* at 387, citing *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist.1983). "An appellate court should reserve reversal of a conviction as being against the manifest weight of the evidence for only the most ' "exceptional case in which the evidence weighs heavily against the conviction." ' " *Kurtz* at ¶ 17, quoting *Thompkins* at 387, quoting *Martin* at 175.

{¶ 19} "In conducting a manifest weight of the evidence review, we may consider the credibility of the witnesses." *Kurtz* at ¶ 18, citing *State v. Cattledge*, 10th Dist. No. 10AP-105, 2010-Ohio-4953, ¶ 6. However, in conducting such review, " 'we are guided by the presumption that the jury, or the trial court in a bench trial, "is best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony." ' " *Kurtz* at ¶ 18, quoting *Cattledge* at ¶ 6, quoting *Seasons Coal Co., Inc. v. Cleveland*, 10 Ohio St.3d 77, 80

(1984). "Accordingly, we afford great deference to the jury's determination of witness credibility." *State v. Albert*, 10th Dist. No 14AP-30, 2015-Ohio-249, ¶ 14. "Mere disagreement over the credibility of witnesses is not a sufficient reason to reverse a judgment on manifest weight grounds." *State v. Harris*, 10th Dist. No. 13AP-770, 2014-Ohio-2501, ¶ 25, *appeal not allowed*, 140 Ohio St.3d 1455, 2014-Ohio-4414, citing *State v. G.G.*, 10th Dist. No. 12AP-188, 2012-Ohio-5902, ¶ 7.

{¶ 20} R.C. 2923.161(A)(1) prohibits any person from "knowingly * * * [d]ischarg[ing] a firearm at or into an occupied structure that is a permanent or temporary habitation of any individual." R.C. 2923.162(A)(3) defines the offense of discharging a firearm on or near a prohibited premises as "[d]ischarging a firearm upon or over a public road or highway." The offense of tampering with evidence is defined in R.C. 2921.12(A)(1) as follows:

> (A) No person, knowing that an official proceeding or investigation is in progress, or is about to be or likely to be instituted, shall do any of the following:
>
> (1) * * * conceal, * * * any * * * thing, with purpose to impair its value or availability as evidence in such proceeding or investigation.

{¶ 21} Appellant contends that, in the absence of eye-witness testimony or other direct evidence identifying him as the person who fired gunshots into Gaetano's home, the circumstantial evidence presented by appellee was legally insufficient to prove, beyond a reasonable doubt, that appellant committed the offenses of which he was convicted. We disagree.

{¶ 22} "Circumstantial evidence is the ' "proof of facts by direct evidence from which the trier of fact may infer or derive by reasoning other facts in accordance with the common experience of mankind.'' " " *State v. Robinson*, 10th Dist. No. 17AP-5, 2018-Ohio-1809, ¶ 20, quoting *State v. Griesheimer*, 10th Dist. No. 05AP-1039, 2007-Ohio-837, ¶ 26, quoting *State v. Bentz*, 2 Ohio App.3d 352, 355, fn. 6 (1st Dist.1981). "It has the same probative value as direct evidence." *Robinson* at ¶ 20, citing *Jenks*, 61 Ohio St.3d at 272. "[C]ircumstantial evidence is sufficient to sustain a conviction if that evidence would convince the average mind of the defendant's guilt beyond a reasonable doubt." *State v. Heinish*, 50 Ohio St.3d 231, 238 (1990).

{¶ 23} Appellant does not deny the evidence shows that on August 12, 2017, someone fired numerous gunshots at Gaetano's home from a vehicle and then crashed the vehicle into a nearby pole before fleeing the scene on foot. Appellant does not argue that such evidence is insufficient to prove the elements of the primary offenses for which appellant was convicted. Rather, appellant argues that the circumstantial evidence presented by appellee is insufficient to establish, beyond a reasonable doubt, that appellant was the person who committed the offenses. In our view, the circumstantial evidence of appellant's guilt is clearly sufficient to establish his guilt beyond a reasonable doubt.

{¶ 24} When viewed in appellee's favor, the evidence establishes that immediately after numerous gunshots were fired from a vehicle into Gaetano's home, Dorsey arrived at the scene and saw a tall, heavy set, black male running away from the scene, and down an alley while carrying something in his hand. Though Dorsey lost sight of the man for a short time, he eventually encountered appellant, who fit the description of the man Dorsey had been tracking, standing on the porch of a residence at 464 Whitethorne Avenue. When Dorsey returned to the Whitethorne address after interviewing Gaetano, appellant had gone inside the home and refused to come out.

{¶ 25} The evidence also shows that at or about the time the gunshots were fired into Gaetano's residence, a Chevrolet Cruze vehicle crashed into a pole down the street from Gaetano's residence. Shell casings were discovered and removed from the vehicle as well as swabs from blood stains in the vehicle.

{¶ 26} After a brief stand-off with police, appellant emerged from the residence where he was taken into custody. At that time, Dorsey observed an open wound on appellant's head. The evidence recovered from inside the Whitethorne Avenue residence included the keys to the crashed vehicle, and two-firearms, a Smith & Wesson handgun and a Glock semi-automatic handgun with an extended magazine. All these items were discovered either under or inside a cushion of the love seat as if to conceal them from view. The forensic evidence showed that of the 14 shell casings recovered from in front of Gaetano's home and the crashed vehicle, 10 were fired by the Glock and 3 were fired from the Smith & Wesson. Single-source DNA from the blood found on the Glock firearm, the laser light for that firearm, the cushion of the love seat, and the driver's side front floor area of the crashed vehicle matched appellant's DNA.

{¶ 27} We find that the circumstantial evidence presented by appellee would convince the average mind of the appellant's guilt beyond a reasonable doubt. *Heinish* at 238. Accordingly, appellant's convictions were supported by sufficient evidence.

{¶ 28} Appellant contends, however, that the absence of gunshot residue on his person shows that he could not have been the shooter. Appellant overlooks the testimony of Donna Schwesinger, who conducted the gunshot residue test for BCI. She testified that "[g]unshot residue can be easily removed or washed away." (Aug. 15, 2018 Tr. at 94.) The undisputed evidence shows that appellant was in the 464 Whitethorne Avenue residence for "more than 30 minutes" before he surrendered to police. (Aug. 15, 2018 Tr. at 60.) Accordingly, the evidence showed that appellant had the opportunity to rid himself of gunshot residue.

{¶ 29} Appellant also claims that the presence of a single 9 mm shell casing in front of Gaetano's home proves that a weapon, other than the two firearms discovered in the search of the Whitethorne residence, may have been used in the shooting. Appellant, however, fails to explain how such evidence exculpates him from the crimes. Moreover, both Dorsey and Randall testified that the Hilltop area of Columbus where these crimes took place is a high crime area and that multiple shooting incidents occur there on a daily basis. Thus, the jury could have reasonably concluded that the presence of a stray shell casing in the street outside Gaetano's home was of no consequence to the case. For similar reasons, and contrary to appellant's assertion, we see no exculpatory value in the evidence that someone had reportedly shot at Gaetano's home in the past.

{¶ 30} Though it is theoretically possible that someone else committed the crimes in question, in our view, the evidence presented by appellee forecloses any reasonable doubt as to appellant's guilt. On this record, we cannot say that the jury lost its way and created a manifest injustice when it found appellant guilty of the offenses for which he was convicted. Accordingly, we hold that appellant's convictions were supported by sufficient evidence in the record and were not against the manifest weight of the evidence.

{¶ 31} For the foregoing reasons, appellant's first assignment of error is overruled.

**B. Appellant's Second Assignment of Error**

{¶ 32} In his second assignment of error, appellant argues that the trial court erred when it refused to merge Count 5 of the indictment charging appellant with discharging a

firearm on or near a prohibited premises and Count 6 of the indictment charging appellant with improperly handling a firearm in a motor vehicle. Appellee submits that appellant's merger argument is moot. We agree with appellee.

{¶ 33} R.C. 2941.25(A) provides that "[w]here the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one." When a trial court concludes that an accused has been found guilty of allied offenses of similar import, it has a mandatory duty to merge the allied offenses by imposing a single sentence. *State v. Williams*, 148 Ohio St.3d 403, 2016-Ohio-7658, ¶ 13.

{¶ 34} Here, appellant does not allege error on the part of the trial court in failing to merge Count 5 with Count 4 for sentencing purposes. Rather, appellant's second assignment of error alleges that the trial court erred by failing to merge Count 5 and Count 6. As previously noted, the trial court merged Count 4 and Count 6, and appellee elected sentencing on Count 4. The Supreme Court of Ohio has determined that "for purposes of R.C. 2941.25, a 'conviction' consists of a guilty verdict and the imposition of a sentence or penalty." *State v. Whitfield*, 124 Ohio St.3d 319, 327, 2010-Ohio-2, ¶ 12. Because the trial court did not impose sentence upon appellant for the offense charged in Count 6, appellant was not convicted of that offense. *Id.* Accordingly, appellant's merger argument is moot. *State v. Myers*, 154 Ohio St.3d 405, 2018-Ohio-1903, ¶ 138 (because the trial court had merged the kidnapping charge with the aggravated robbery conviction, appellant's argument that the kidnapping charge should have been merged with the aggravate murder conviction was rendered moot).

{¶ 35} For the foregoing reasons, appellant's second assignment of error is dismissed as moot. *State v. Watkins,* 10th Dist. No. 09AP-669, 2010-Ohio-4187, ¶ 13-20, *State v. Williams*, 12th Dist. No. CA2018-01-012, 2018-Ohio-3989, ¶ 14.

## IV. CONCLUSION

{¶ 36} Having overruled appellant's first assignments of error and having dismissed appellant's second assignment of error as moot, we affirm the judgment of the Franklin County Court of Common Pleas.

*Judgment affirmed.*

DORRIAN and NELSON, JJ., concur.

_____