[Cite as *State v. Schulman*, 2020-Ohio-4146.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

State of Ohio,                              :

     Plaintiff-Appellee,              :

                                       No. 19AP-566

v.                                         :           (C.P.C. No. 17CR-5021)

Yaakov M. Schulman,                        :        (REGULAR CALENDAR)

     Defendant-Appellant.             :

---

D E C I S I O N

Rendered on August 20, 2020

---

**On brief:** *Ron O'Brien*, Prosecuting Attorney, and *Daniel J. Stanley*, for appellee. **Argued:** *Daniel J. Stanley*.

**On brief:** *Samuel H. Shamansky Co., L.P.A., Samuel H. Shamansky, Donald L. Regensburger*, and *Colin E. Peters*, for appellant. **Argued:** *Samuel H. Shamansky*.

---

APPEAL from the Franklin County Court of Common Pleas

SADLER, P.J.

{¶ 1} Defendant-appellant, Yaakov M. Schulman, appeals from the judgment of the Franklin County Court of Common Pleas convicting him of illegal voting in violation of R.C. 3599.12. For the following reasons, we affirm the judgment of the trial court.

## I. FACTS AND PROCEDURAL HISTORY

{¶ 2} On September 14, 2017, a Franklin County Grand Jury indicted appellant in case No. 17CR-5021 on one count of false voter registration, in violation of R.C. 3599.11, a felony of the fifth degree, and one count of illegal voting, in violation of R.C. 3599.12, a felony of the fourth degree. Appellant entered a plea of not guilty to all charges.

{¶ 3} On October 2, 2017, appellant filed a demand for discovery, which plaintiff-appellee, State of Ohio, responded to with an initial discovery packet on October 30, 2017. A supplemental response to appellant's request for discovery was filed on May 21, 2019.

{¶ 4} After a number of continuances, the case proceeded to a jury trial on June 3, 2019. At the start of the trial, the parties stipulated to the findings of the handwriting analyst, William Bennet, "that all writing on questioned documents were the handwriting of the defendant Yaakov Schulman including signatures." (State's Ex. E.) The parties also stipulated that appellant was not a United States citizen but a lawful resident alien commonly referred to as a "Green Card holder." (Tr. Vol. 1 at 42.)

{¶ 5} The state first called Special Agent Kevin Barbeau. Barbeau testified that he worked for the Ohio Attorney General's Office, Bureau of Criminal Investigation, assigned to the Southeast Ohio Special Investigations Unit. Barbeau stated that the Ohio Secretary of State's Office provided him a list of individuals, including appellant, that were potentially connected to false voter registration and illegal voting. Barbeau was given copies of appellant's voter registration form, application for an absentee ballot, and absentee ballot envelope.

{¶ 6} Barbeau testified he interviewed appellant at his home concerning the board of elections' documents. According to Barbeau, appellant originally claimed he was a United States citizen and produced his green card, which more accurately noted he was a permanent resident, non-citizen. Barbeau recounted appellant said he moved to the United States in August 2012, and he filled out the voter registration form at the Bureau of Motor Vehicles ("BMV"). While appellant acknowledged "that he had filled [out the application for absentee ballot]" and absentee ballot envelope, he denied ever voting in an election. (Tr. Vol. 1 at 61.) Barbeau testified the absentee ballot envelope says "that there's a ballot within the envelope, and it's got [appellant's] last four of his Social Security number and his signature on it, and it's an envelope from the Board of Elections." (Tr. Vol. 1 at 79.)

{¶ 7} The state called Alicia Healy as its next witness. Appellant objected contending that Healy was not on the prosecutor's witness list. The prosecutor initially argued that the witness had been disclosed in discovery, and Healy was subpoenaed on May 10, 2019 so appellant should have known she was a witness. The prosecutor also claimed that he verbally told opposing counsel about the witness, which was disputed by

appellant. The trial court concluded that while the witness was not disclosed, appellant would be allowed to interview her "a couple minutes or so" before cross-examination. (Tr. Vol. 1 at 97.)

{¶ 8} Healy testified she is the voter services supervisor for the board of elections, where she has worked since 2013. According to Healy, when a voter registration comes into the board of elections, it is scanned into the system and three different individuals review each form. Once an application is processed, the voter will receive a letter acknowledging he or she is a registered voter in Franklin County. Healy described what individuals constituted a qualified voter in Ohio and Franklin County. According to Healy, the only way to become a registered voter in Ohio is by filling out the voter registration form. Healy testified that voter registration forms are kept in the normal course of business at the board of elections electronically with the originals stored in a location off-site. Healy stated she accessed appellant's voter registration form as part of her investigation in this case and testified it was a true and accurate copy of the voter registration retained by the board of elections. Healy continued noting the registration form included appellant's name, address, birth date, signature, and was dated September 13, 2012. Healy testified that above appellant's signature, the form reads "I declare, under penalty of election falsification, I am a citizen of the United States, will have lived in this state for 30 days immediately preceding the next election, and I will be at least 18 years of age at the time of the general election." (Tr. Vol. 1 at 127-28.) Healy testified, based on her experience and training at the board of elections, the voter registration process has not changed since 2012.

{¶ 9} The state called Matthew Kelly as its third witness. Appellant objected and moved to exclude Kelly, arguing he was also not disclosed as a witness. The prosecutor repeatedly claimed that Kelly was disclosed as a witness but eventually conceded that "[h]e must not have been put in there." (Tr. Vol. 1 at 139.) The trial court asked what the nature of the testimony entailed:

> [PROSECUTOR]: His testimony is going to be, Judge, that --
> he is going to go over the voter absentee application form and
> then the voter absentee ballot envelope.
>
> THE COURT: Okay. So authentication type --
>
> [PROSECUTOR]: Authentication.
>
> * * *

THE COURT: * * * My point is this: We have some records custodian people who are testifying who their specific names weren't disclosed. They should have been.

I don't believe that under Rule 16 -- I don't believe, I know, under Rule 16 that exclusion of the witness is an option, but it's not necessarily mandatory.

The other options are to grant a continuance, give defense counsel opportunity to question them.

(Tr. Vol. 1 at 140-41.)

{¶ 10} The prosecutor offered to "tak[e] a continuance and giv[e] defense counsel ample time to interview him and discuss the two question documents." (Tr. Vol. 1 at 143.) The trial court provided the following limiting instruction: "[I]f the testimony of this witness is to authenticate some documents that were not only subject to discovery, but are openly being discussed throughout the trial, I'll allow the witness to testify, I guess, on the condition that * * * this person is just authenticating some documents." (Tr. Vol. 1 at 144.) The trial court also allowed appellant's counsel to interview Kelly and if any other "red flags" arose, the court would revisit the issue. (Tr. Vol. 1 at 144.) During the recess, counsel for appellant interviewed Kelly and noted no objection after speaking with the witness.

{¶ 11} Kelly has been the manager of absentee voting for the board of elections since February 5, 2019. According to Kelly, all absentee voter applications are scanned into the system. The original absentee ballot applications have a "retention schedule of four years," and the identification envelope "that is returned to us that we scan back in with the ballots as they come in" has a 22-month retention schedule. (Tr. Vol. 1 at 158.) Kelly testified "the finished completed ballot that the voter fills out, they would put that completed ballot into what we call an identifier envelope. And on the outside of the identifier envelope there are areas where we ask for information." (Tr. Vol. 1 at 159.) When the ballots are taken from the envelope, there are no identifying marks that connect the ballot to the voter. Kelly stated he reviewed appellant's entire record and looked at the records attached to his file to confirm the records were accurate. Kelly testified he knows how the records are kept at the board of elections and identified appellant's application and envelope as true and accurate copies. Kelly testified the envelope, marked as Exhibit C, included appellant's name and address, which matched the information on the other documents:



The record indicates appellant's absentee voter identification envelope was signed on October 20, 2012. Above appellant's name and address, the envelope notes in capitalized bold letters "ABSENTEE BALLOT CONTAINED HEREIN WAS MAILED TO." (State's Ex. C.) The envelope also includes a statement that reads in relevant part:

> I declare under penalty of election falsification that I am a qualified elector of the State of Ohio and that the ballot or ballots within contained no voting marks of any kind when I received them, and that I caused the ballot or ballots to be marked, enclosed in the identification envelopes, and sealed in the envelope.

(State's Ex. C.)

{¶ 12} The prosecutor then asked Kelly "[h]ow do you know that this envelope with Mr. Schulman's name and address on it, whether or not it contained a ballot or not to be processed and counted in the 2012 general election." (Tr. Vol. 1 at 173.) Appellant objected to the question, which was ultimately overruled. Kelly testified:

> We know because the scanned document we have before us here has nothing attached to the voter record, no labels on the envelope, nothing indicating here that the ballot was not made good.

* * *

Q. All right.

A. This represents a ballot that was -- or an envelope containing a ballot that was made good.

If there was a deficiency --

Q. What does "made good" mean?

A. "Made good" is a term that we use, that we make it good in the system, so the ballot can be extracted and counted. And it means it didn't hit one of the markers that would make it a deficient ballot or a deficient submission.

* * *

If there was any sort of deficiency, this image would show that it was marked as such; and it does not.

(Tr. Vol. 1 at 174-75.)

{¶ 13} Kelly continued, stating the "image represents to me that there was a ballot in the envelope and it was counted." (Tr. Vol. 1 at 175-76.) Kelly testified that to preserve the secrecy of the voting process, once the ballot is out of the envelope, they can no longer track whose ballot belongs to what envelope. At the close of direct examination, appellant moved the trial court to reconsider its previous ruling allowing Kelly to testify arguing the state's questioning exceeded the limiting instruction. The objection was noted and overruled. On cross-examination, Kelly stated that to his knowledge, the original documents have been destroyed but conceded he had never seen the destruction records. Kelly also acknowledged he had no personal actual knowledge appellant's ballot was received by the board of elections.

{¶ 14} The state's final witness was Michael Scheerer. Scheerer stated he was the chief investigator for the Franklin County Prosecutor's Office until he retired. Scheerer testified regarding the process of obtaining appellant's handwriting analysis and that he observed appellant fill out a handwriting sample and sign the document. According to Scheerer, appellant stated the BMV insisted he fill out the registration form. Scheerer testified that on obtaining appellant's handwriting sample, he delivered it to the expert for analysis. Scheerer proceeded to read the expert analysis into the record: "There are similarities throughout both the questioned and known writings, and there are no differences that can't be explained. It is my opinion the suspect did write the questioned

items. * * * It is my opinion Yaakov Schulman did sign his name to questioned documents."
(Tr. Vol. 1 at 207.)

{¶ 15} At the close of its case, the state moved to enter Exhibits A through F into the record. Appellant objected as to Exhibits A, B, and C. Appellant argued the documents were outside the witnesses' personal knowledge and based on the testimony of two undisclosed witnesses. Appellant also requested that the trial court strike Kelly's testimony due to the discovery violation and that Kelly's testimony was outside his personal knowledge. The trial court ultimately overruled the objections and admitted all exhibits. The trial court reasoned:

> Criminal Rule 16 doesn't say they automatically should be excluded. That should be a last resort.
>
> The Court offered counsel the opportunity for a continuance or to discuss the witness ahead of time; and if something surprising came up during your examination, we could continue the case even further.

(Tr. Vol. 1 at 225-26.)

{¶ 16} Appellant's counsel noted for the record that he interviewed Kelly under the belief that his testimony would be regarding authentication and identification. Appellant moved to strike Kelly's testimony claiming it was only allowed based on false pretenses, which was overruled by the trial court. Appellant then moved for acquittal on all counts under Crim.R. 29; the trial court denied appellant's motion. Appellant rested its case, and the parties proceeded with closing arguments.

{¶ 17} During closing statements, the prosecutor remarked that based on Kelly's testimony, the jury should find appellant guilty of illegal voting or attempting to vote based on the empty envelope. "[T]he only way of knowing if a vote is cast is by the envelope. * * * I would [posit] to you that that means he was attempting to vote. What individual sends an empty envelope?" (Tr. Vol. 2 at 255-56.) The prosecutor remarked that Kelly was the witness "that showed that Mr. Schulman voted." (Tr. Vol. 2 at 287.) After the conclusion of closing arguments, the trial court proceeded to instruct the jury.

{¶ 18} On June 6, 2019, the jury returned verdicts of not guilty of false voter registration in Count 1 of the indictment and guilty of illegal voting in Count 2 of the indictment. The trial court ordered a presentence investigation be conducted. On August 14, 2019, the trial court held a sentencing hearing. The trial court sentenced

appellant to a 2-year period of community control and a fine of $2,500. The trial court also sentenced appellant to 12 months in prison to be served if appellant violated the terms of his community control.

{¶ 19} Appellant filed a timely appeal.

## II. ASSIGNMENTS OF ERROR

{¶ 20} Appellant assigns the following as trial court error:

[1.] The trial court erred in permitting the state to introduce the testimony of undisclosed witnesses, in violation the Ohio Rules of Criminal Procedure and Appellant's right to due process and confrontation as guaranteed by the United States and Ohio Constitutions.

[2.] The trial court by permitting incompetent witnesses to testify in violation of the Ohio Rules of Evidence and Appellant's right to due process as guaranteed by the United States and Ohio Constitutions.

[3.] Appellant was convicted of Illegal Voting in the absence of sufficient evidence, in violation of his right to due process as guaranteed by the United States and Ohio Constitutions.

[4.] Appellant's conviction was against the manifest weight of the evidence, in violation of his right to due process as guaranteed by the Ohio Constitution.

[5.] The prosecution's repeated misstatements regarding discovery and deliberate misrepresentation regarding the testimony it planned to elicit from a witness constituted prosecutorial misconduct and deprived Appellant of a fair trial, in violation of his rights as guaranteed by the Sixth Amendment to the United States Constitution.

## III. LEGAL ANALYSIS

### A. Appellant's First Assignment of Error

{¶ 21} In his first assignment of error, appellant argues the trial court erred in permitting the state to introduce two undisclosed witnesses to testify at trial. Appellant maintains the error deprived him of due process as guaranteed by the United States and Ohio Constitutions.

{¶ 22} Crim.R. 16 governs discovery and disclosure of evidence in a criminal proceeding. Pursuant to Crim.R. 16(A), all parties in a criminal case must provide all information required for "a full and fair adjudication of the facts, to protect the integrity of the justice system and the rights of defendants, and to protect the well-being of witnesses,

victims, and society at large." The parties are required to provide "a written witness list, including names and addresses of any witness it intends to call in its case-in-chief, or reasonably anticipates calling in rebuttal or surrebuttal." Crim.R. 16(I). The parties have a "continuing duty to supplement their disclosures" before trial. Crim.R. 16(A). When a party fails to disclose a witness, the "[trial] court may order such party to permit the discovery or inspection, grant a continuance, or prohibit the party from introducing in evidence the material not disclosed, or it may make such other order as it deems just under the circumstances." Crim.R. 16(L)(1). When crafting an order for a Crim.R. 16 violation, the trial court must impose "the least severe sanction that is consistent with the purpose of the rules of discovery." *Lakewood v. Papadelis*, 32 Ohio St.3d 1 (1987), paragraph two of the syllabus.

{¶ 23} Whether the trial court erred concerning a Crim.R. 16 discovery violation is reviewed under an abuse of discretion analysis. *State v. Williams*, 10th Dist. No. 16AP-350, 2018-Ohio-974, ¶ 20. "An abuse of discretion is more than an error of judgment; it means that the trial court was unreasonable, arbitrary, or unconscionable in its ruling." *State v. Pieronek*, 9th Dist. No. 18AP0031, 2019-Ohio-4305, ¶ 20, citing *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983). A reviewing court may not substitute its own judgment for that of the trial court. *Pieronek* at ¶ 20, citing *Pons v. Ohio State Med. Bd.*, 66 Ohio St.3d 619, 621 (1993).

{¶ 24} A violation of Crim.R. 16 is reversible error "only when there is a showing that (1) the prosecution's failure to disclose was willful, (2) disclosure of the information prior to trial would have aided the accused's defense, and (3) the accused suffered prejudice." *State v. Jackson*, 107 Ohio St.3d 53, 2005-Ohio-5981, ¶ 131, citing *State v. Parson*, 6 Ohio St.3d 442, 445 (1983). We have consistently held "that all three of the *Parson* factors must be present to demonstrate reversible error under Crim.R. 16." *Williams* at ¶ 22; *see also State v. Davis*, 10th Dist. No. 08AP-443, 2009-Ohio-1375, ¶ 25-27 (concluding the *Parson* test is conjunctive requiring all three prongs to be satisfied); *State v. Wiley*, 10th Dist. No. 10AP-679, 2011-Ohio-3595, ¶ 15.

{¶ 25} Here, there is no dispute that Healy and Kelly were not listed in the state's initial discovery packet on October 30, 2017 or its supplemental response to appellant's request for discovery on May 21, 2019. While the state's failure to identify the witnesses

constituted a violation of Crim.R. 16, there is no evidence in the record that the state's actions were willful. The state provided the relevant documents from the board of elections in discovery, and both witnesses were subpoenaed prior to trial. Even defense counsel acknowledged the nondisclosure "was an accident, that's for sure." (Tr. Vol. 1 at 221.) As such, we find the failure to disclose the two board of elections' witnesses was unintentional and not a willful attempt to deceive appellant. Because we have found the nondisclosure was not willful, we decline to address the two remaining *Parson* factors. Accordingly, the trial court did not abuse its discretion in allowing Healy and Kelly to testify at trial.

{¶ 26} Based on the forgoing, appellant's first assignment of error is overruled.

## B. Appellant's Second Assignment of Error

{¶ 27} Appellant next argues the trial court "permit[ted] incompetent witnesses to testify in violation of the Ohio Rules of Evidence and appellant's right to due process as guaranteed by the United States and Ohio Constitutions." (Capitalization omitted.) (Appellant's Brief at 27.) Appellant primarily contends the witnesses were incompetent because they lacked personal knowledge of the original documents and did not work at the board of elections in 2012.

{¶ 28} Whether evidence is admitted or excluded rests within the sound discretion of the trial court, and we will not reverse its evidentiary ruling absent an abuse of discretion. *State v. Lawson*, 10th Dist. No. 19AP-68, 2020-Ohio-3004, ¶ 11. "The trial court is vested with this discretion because it is in a much better position than we are to evaluate the authenticity of evidence and assess the credibility and veracity of witnesses." *State v. Smith*, 3d Dist. No. 7-11-06, 2012-Ohio-532, ¶ 15, citing *State v. Hancock*, 108 Ohio St.3d 57, 2006-Ohio-160, ¶ 129.

{¶ 29} Evid.R. 901 requires evidence to be properly authenticated before it is deemed admissible evidence. Public records "customarily in writing but in any form including a data compilation, may be authenticated by evidence that the record or report is from the public office where it is kept. Such authentication may be by testimony of the person having custody of the record or report in the office where the record or report is kept." Staff Note, Evid.R. 901(B)(7). "[P]ublic records or reports are authenticated through extrinsic evidence that the writing 'is from the public office where items of this nature are kept.' " *Bowman v. Holley*, 8th Dist. No. 98631, 2013-Ohio-1790, ¶ 23, quoting *Seringetti*

*Constr. Co. v. Cincinnati*, 51 Ohio App.3d 1, 9-10 (1st Dist.1988). "This threshold requirement for authentication of evidence is low and does not require conclusive proof of authenticity." *State v. Renfro*, 12th Dist. No. CA2011-07-142, 2012-Ohio-2848, ¶ 30, citing *State v. Easter*, 75 Ohio App.3d 22, 25 (4th Dist.1991). The prosecution only needs to demonstrate a "reasonable likelihood" that the evidence is what it claims. *Renfro* at ¶ 30, quoting *State v. Thomas*, 12th Dist. No. CA2010-10-099, 2012-Ohio-2430, ¶ 15. The authentication of evidence only requires "sufficient foundational evidence to allow the trier of fact to conclude that the evidence is what the proponent claims it to be." *Smith* at ¶ 16, citing *State ex rel. Montgomery v. Villa*, 101 Ohio App.3d 478, 484-85 (10th Dist.1995). We have interpreted Evid.R. 901(B)(1) to permit any competent witness that has knowledge of the issue to testify to the relevant facts to establish the requisite foundation for identification. *State v. McCarrel*, 10th Dist. No. 18AP-660, 2019-Ohio-2984, ¶ 37. Authenticity may be demonstrated using direct or circumstantial evidence. *Id.*

{¶ 30} In the instant case, Healy and Kelly testified as to the general procedures of the board of elections and its document retention policies. Both witnesses also testified to their working knowledge of the board of elections' record-keeping system in their respective divisions. Healy and Kelly stated that the documents, marked as Exhibits A through C, were true and accurate copies of the records that were created and maintained by the board of elections. We conclude the trial court did not abuse its discretion finding the state demonstrated the witnesses possessed the requisite knowledge to authenticate the board of elections' documents and established a reasonable likelihood the documents were what they claimed. As the trial court correctly noted, whatever objections to Healy's and Kelly's testimony go towards weight, not admissibility. On admission of the evidence, the trier of fact would be entitled to give their testimony as much or little weight as it deemed appropriate.

{¶ 31} Appellant argues the witnesses had never seen the original documents and could not speak to their authenticity. We disagree. A custodian of records or qualified witness may provide the required foundation for admissibility of certain evidence. *State v. Thyot*, 1st Dist. No. C-170178, 2018-Ohio-644, ¶ 22, citing *Great Seneca Fin. v. Felty*, 170 Ohio App.3d 737, 2006-Ohio-6618, ¶ 10 (1st Dist.). The custodian's testimony must provide a "working knowledge of the specific record-keeping system that produced the

document." *Thyot* at ¶ 22, citing *State v. Davis*, 62 Ohio St.3d 326, 342 (1991). " ' "While the witness need not have personal knowledge of the creation of the particular record in question * * *, he must be able to vouch from personal knowledge of the record-keeping system that such records were kept in the regular course of business." ' " *Thyot* at ¶ 22, quoting *State v. Hirsch*, 129 Ohio App.3d 294, 312 (1st Dist.1998), quoting *Davis* at 342.

{¶ 32} Here, while Kelly and Healy were not present for the creation of the documents, they were able to vouch for the record-keeping system at the board of elections and that the exhibits were kept in the ordinary course of business. Moreover, Kelly testified the original absentee ballot application has a "retention schedule of four years," and the identification envelope "that is returned to us that we scan back in with the ballots as they come in" has a 22-month retention schedule. (Tr. Vol. 1 at 158.) Kelly testified the documents, "[t]o my knowledge, they have been destroyed." (Tr. Vol. 1 at 185.) While the documents at trial were not the originals, admission of duplicate copies of documents is within the sound discretion of the court. *State v. Boddie*, 10th Dist. No. 12AP-74, 2012-Ohio-5473, ¶ 15 (finding Evid.R. 1003 authorizes the trial court to admit photocopied records into evidence). The trial court is only required to determine the state presented sufficient preliminary evidence to satisfy the threshold of admissibility under Evid.R. 901. As such, we find the trial court did not abuse its discretion as it is in the best position to determine the credibility of the witnesses and authenticity of the exhibits.

{¶ 33} Appellant next argues Healy and Kelly were never identified or offered as experts, and the state failed to provide expert reports. Evid.R. 703 provides "[t]he facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by the expert or admitted in evidence at the hearing." Healy and Kelly were qualified witnesses testifying regarding their direct knowledge of board of elections' policies and procedures. Both witnesses testified regarding their roles at the board of elections, their training, how the records were retained, and how they retrieved the documents from the system prior to trial. Because the witnesses testified as custodians of records or qualified witnesses for the board of elections, they were not required to have been identified as experts or provide reports under Evid.R. 703.

{¶ 34} Accordingly, we overrule appellant's second assignment of error.

### C. Appellant's Third and Fifth Assignments of Error

{¶ 35} For clarity of analysis, we will address appellant's third and fifth assignments of error together. Appellant argues the prosecutor's multiple misstatements regarding disclosure of the witnesses from the board of elections and question exceeding the limiting instruction by the trial court constitute prosecutorial misconduct. Appellant contends that "[a]bsent the claim that the witness was offered only for authentication of documents, it is highly unlikely that the trial court would have permitted Mr. Kelly to testify at all." (Appellant's Brief at 40.) The state has argued Kelly's testimony was solely to authenticate the documents kept by the board. The state contends that Kelly's testimony concerning the markings, or lack thereof, is within the scope of the limiting instruction to identify the document.

{¶ 36} When evaluating allegations of prosecutorial misconduct, "we 'must determine (1) whether the prosecutor's conduct was improper and (2) if so, whether it prejudicially affected [the defendant's] substantial rights.' " *State v. Thompson*, 141 Ohio St.3d 254, 2014-Ohio-4751, ¶ 162, quoting *State v. LaMar*, 95 Ohio St.3d 181, 2002-Ohio-2128, ¶ 121. As prosecutorial misconduct inherently concerns due process, our analysis addresses " 'the fairness of the trial, not the culpability of the prosecutor.' " *State v. Jones*, 135 Ohio St.3d 10, 2012-Ohio-5677, ¶ 200, quoting *Smith v. Phillips*, 455 U.S. 209, 219 (1982).

{¶ 37} As an initial matter, appellant recast his previous argument concerning the nondisclosure of witnesses into a claim of prosecutorial misconduct. As set forth previously, the prosecutor's failure to disclose the two witnesses from the board of elections and misstatements regarding their disclosure were effectively remedied by the trial court. While the state's failure to disclose the two witnesses from the board of elections constitute Crim.R. 16 violations, the trial court did not abuse its discretion imposing a limiting instruction for Kelly's testimony and allowing appellant the opportunity to interview both witnesses.

{¶ 38} Pursuant to Evid.R. 901(A), "authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." Evid.R. 901(B) provides a list of ways evidence could be authenticated. This includes testimony of the document's "[a]ppearance,

contents, substance, internal patterns, or other distinctive characteristics, taken in conjunction with circumstances." Evid.R. 901(B)(4). "A letter or a voice over the telephone may be related to a particular person by the very fact that the matters set forth in the letter or the telephone conversation were known peculiarly to a particular person. * * * Or a writing may be related to a particular person by its linguistic patterns and characteristics." (Internal citations omitted.) Staff Note, Evid.R. 901(B)(4).

{¶ 39} We have previously addressed authentication of evidence under Evid.R. 901(B)(4) in similar contexts concluding the evidence was admissible after testimony of the unique characteristics of the document or recording. *See, e.g., State v. Guy*, 10th Dist. No. 17AP-322, 2018-Ohio-4836, ¶ 38 (concluding the state's use of a recording to identify defendant as the caller was authentic based on defendant's personal identification number at the jail, caller's statements about an affiliated organization, details of the case at issue, and that a SWAT officer allegedly killed defendant's dog); *State v. Ross*, 10th Dist. No. 17AP-141, 2018-Ohio-3027, ¶ 39-40 (determining the victim's testimony sufficiently authenticated social media messages based on her knowledge of defendant's unique Facebook name and particular details of the events at issue, including whether defendant used a contraceptive); *State v. Small*, 10th Dist. No. 06AP-1110, 2007-Ohio-6771, ¶ 40-41 (concluding a witness's testimony concerning a telephone conversation was sufficient particular evidence to identify the defendant from the call based on his Jamaican accent, details of money owed to him, and testimony that defendant went by a nickname). In *State v. Townsend*, 7th Dist. No. 04 MA 110, 2005-Ohio-6945, the Seventh District Court of Appeals affirmed the trial court's ruling that the contents of a letter to the defendant's brother claiming defendant was going to kill the victim was unique and provided substantial evidence under Evid.R. 901(B)(4) that a jury could infer that defendant wrote the letter. The *Townsend* court wrote:

> In evaluating the totality of the circumstances, we explained that the court can consider the envelope and contents. For instance, the court can scan for any distinctive contents, such as facts that only the alleged writer would know. This is true even if the letter is unsigned or anonymous. As for the envelope, the return address can be relevant to the determination of authenticity.

(Internal citations omitted.) *Id.* at ¶ 55.

{¶ 40} In the present case, the prosecutor asked "the big question: How do you know that this envelope with Mr. Schulman's name and address on it, whether or not it contained a ballot or not to be processed and counted in the 2012 general election?" (Tr. Vol. 1 at 173.)[1] Kelly responded "[w]e know because the scanned document we have before us here has nothing attached to the voter record, no labels on the envelope, nothing indicating here that the ballot was not made good." (Tr. Vol. 1 at 174.) Kelly continued, stating "[t]his image represents to me that there was a ballot in the envelope and it was counted." (Tr. Vol. 1 at 175-76.)

{¶ 41} Here, Kelly's testimony is not whether the lack of markings are unique characteristics of the document but whether the lack of markings is evidence of illegal voting based on the retention policies of the board of elections. In *Townsend*, the letter and envelope provided specific details particular to the defendant, which a jury could use to infer that the *Townsend* defendant wrote the letter. Kelly's testimony does not go towards the uniqueness of the envelope but is an interpretation on the document. While other aspects of the envelope, such as appellant's signature, date of birth, and Social Security number, fall under Evid.R. 901(B)(4) as a proper marking for authentication purposes, Kelly's testimony whether the ballot was cast goes toward the primary element of the offense of illegal voting.

{¶ 42} While the prosecutor's initial questioning of Kelly was limited to authentication, we find the state's inquiry into whether the envelope contained a ballot to be counted in the 2012 general election exceeded the scope of the trial court's limiting instruction. The trial court allowed Kelly's testimony based on the state's representation that Kelly's testimony was going to be limited to identification of the board of elections' documents. Counsel for appellant interviewed Kelly during a recess under the belief that the testimony would be restricted to those parameters. As such, we find the state's questioning of Kelly concerning whether a ballot was contained in the envelope improper.

{¶ 43} Having found the prosecutor's question improper, we must now determine if appellant's substantial rights were affected or whether the error was harmless. Prosecutorial misconduct is only considered reversible in rare circumstances. *State v.*

---

[1] We interpret the "big question" as going to the primary element of the offense whether appellant voted or attempted to vote. (Tr. Vol. I at 173.)

*McDowell*, 10th Dist. No. 10AP-509, 2011-Ohio-6815, ¶ 33, citing *State v. Banks*, 10th Dist. No. 03AP-1286, 2005-Ohio-1943, ¶ 6; *State v Davis*, 10th Dist. No. 09AP-869, 2011-Ohio-1023, ¶ 29. The conduct of the prosecutor cannot be grounds for a new trial unless the improper action deprives the defendant of a fair trial. *State v. Norman*, 10th Dist. No. 12AP-505, 2013-Ohio-1908, ¶ 15, citing *State v. Keenan*, 66 Ohio St.3d 402, 405 (1993). " '[A] defendant's substantial rights cannot be prejudiced when the remaining evidence, standing alone, is so overwhelming that it constitutes defendant's guilt, and the outcome of the case would have been the same regardless of evidence admitted erroneously.' " *State v. Mammone*, 139 Ohio St.3d 467, 2014-Ohio-1942, ¶ 110, quoting *State v. Hicks*, 194 Ohio App.3d 743, 2011-Ohio-3578, ¶ 30 (8th Dist.), citing *State v. Williams*, 38 Ohio St.3d 346, 349-50 (1988); *see also State v. Diar*, 120 Ohio St.3d 460, 2008-Ohio-6266, ¶ 205 (finding, in relevant part, while the prosecutor committed misconduct by continuing to ask improper questions after the trial court had sustained objections regarding the questions, the evidence of defendant's guilty was so compelling there was no reason to think the outcome of the trial was affected by the improper remarks).

{¶ 44} While the state's questioning whether a ballot was cast falls outside the trial court's limiting instruction, after excising the prejudicial statements, the strength of the remaining evidence is overwhelming to find appellant guilty of illegal voting. R.C. 3599.12(A)(1) provides that "no person shall * * * [v]ote or attempt to vote in any primary, special, or general election in a precinct in which that person is not a legally qualified elector." The Sixth, Ninth, and Twelfth District Courts of Appeal have interpreted the statute to require strict liability for illegal voting cases. These courts have found the General Assembly intended R.C. 3599.12 to impose strict liability to "protect[] the general welfare by punishing people who vote improperly."[2] *State v. Arent*, 6th Dist. No. WD-11-034, 2012-Ohio-5263, ¶ 14; *State v. Worrell*, 9th Dist. No. 23378, 2007-Ohio-70584, ¶ 13 (holding "no mens rea is required in order to convict one of illegal voting pursuant to R.C. 3599.12(A)(1)"); *State v. Hull*, 133 Ohio App.3d 401, 407 (12th Dist.1999) (finding R.C. 3599.12 was a strict liability statute). Like the other appellate courts, we find R.C. 3599.12 imposes strict liability for illegal voting cases.

---

[2] We note the parties stipulated to the culpable mental state of "reckless" in the jury instructions. (Tr. Vol. 2 at 311.) Because recklessness is a more favorable standard for appellant than would have been otherwise imposed, we find he was not prejudiced by this error at trial.

{¶ 45} A criminal conviction can be based entirely or in part on circumstantial evidence. *State v. Nicely*, 39 Ohio St.3d 147 (1988). " 'Circumstantial evidence is "proof of facts by direct evidence from which the trier of fact may infer or derive by reasoning other facts in accordance with the common experience of mankind." ' " *State v. Groce*, 10th Dist. No. 18AP-51, 2019-Ohio-1007, ¶ 29, quoting *State v. Robinson*, 10th Dist. No. 17AP-5, 2018-Ohio-1809, ¶ 20, quoting *State v. Griesheimer*, 10th Dist. No. 05AP-1039, 2007-Ohio-837, ¶ 26. "Circumstantial evidence and direct evidence inherently possess the same probative value. In some instances certain facts can only be established by circumstantial evidence." *State v. Jenks*, 61 Ohio St.3d 259, 272 (1991), *superseded by state constitutional amendment on other grounds* as stated in *State v. Smith*, 80 Ohio St.3d 89, 102 (1997), fn. 4.

{¶ 46} The evidence at trial regarding the board of elections' documents overwhelmingly demonstrates appellant's guilt of illegal voting. The parties stipulated appellant's signature is on the board of elections' documents, and appellant was not a United States citizen. The issue becomes what evidence demonstrates appellant, an unqualified elector, voted or attempted to vote. Barbeau testified appellant acknowledged he filled out the voter registration, application for absentee ballot, and absentee ballot envelope but denied he had ever voted. Healy testified appellant's voter registration application was filed on September 13, 2012, which noted appellant's name, address, and birth date. The address on the documents indicate appellant resided within Franklin County, Ohio.

{¶ 47} Kelly testified all absentee voter applications are scanned into the system, and the application to vote absentee at trial was a true and accurate copy retained by the board of elections. Kelly testified appellant's application included his name, address, date of birth, and last four digits of appellant's Social Security number. Kelly stated he reviewed appellant's entire record attached to his file to confirm the records were accurate.

{¶ 48} Prior to the improper question, Kelly testified how completed ballots are submitted to the board of elections. "[T]he finished completed ballot that the voter fills out, they would put that completed ballot into what we call an identifier envelope. And on the outside of the identifier envelope there are areas where we ask for information." (Tr. Vol. 1 at 159.) According to Kelly, when the ballots are taken from the envelope, there are no

identifying marks that connect the ballot to the voter. Kelly identified and authenticated the envelope testifying it was retained in the regular course of business at the board of elections. Appellant's signature, date of birth, and last four digits of his Social Security number were written onto the envelope, which matched the identifying information on the other board of elections' documents. Above appellant's name and address, the envelope notes in capitalized bold letters "ABSENTEE BALLOT CONTAINED HEREIN WAS MAILED TO." (Capitalization sic.) (State's Ex. C.) The envelope also includes a declaration that reads:

> I declare under penalty of election falsification that I am a qualified elector of the State of Ohio and that the ballot or ballots within contained no voting marks of any kind when I received them, and that I caused the ballot or ballots to be marked, enclosed in the identification envelopes, and sealed in the envelope.

(State's Ex. C.)

{¶ 49} The declaration on the outside of the document makes clear that a ballot was included within the envelope. By signing the declaration, appellant attested the ballot was "sealed in the envelope," the ballot had no voting marks when it was received, and appellant caused the ballot to be marked. (State's Ex. C.) We also know from the stipulation of the parties that "all writing on questioned documents were the handwriting of defendant Yaakov Schulman including signatures." (State's Ex. E.) The state's explanation for why no ballot was introduced into evidence is reasonable. Kelly testified once a ballot is removed from the envelope, there is no way to match the documents. This is to ensure the voting process remains anonymous. Given the signed declaration on the outside of the envelope and Kelly's testimony concerning the board of elections' retention procedures, there is no doubt that appellant voted or attempted to vote. As such, after excising Kelly's testimony that a ballot had been cast, the remaining evidence established appellant's guilt, and we find the outcome of the trial was not affected.

{¶ 50} Given the overwhelming evidence of appellant's guilt, we find the error was harmless. "[E]rror is harmless beyond a reasonable doubt if the remaining evidence, standing alone, constitutes overwhelming proof of defendant's guilt." *State v. Williams*, 6 Ohio St.3d 281 (1983), paragraph six of the syllabus. Accordingly, we find the state's questioning of Kelly did not affect appellant's substantial rights.

{¶ 51} Appellant alleges in his third assignment of error that the evidence was insufficient that any reasonable trier of fact could not have found him guilty. Sufficiency of the evidence is a legal standard that tests if the evidence is legally adequate to support the verdict. *State v. Wright*, 10th Dist. No. 18AP-770, 2019-Ohio-5201, ¶ 16. When reviewing the sufficiency of the evidence, the court must consider the totality of the evidence and review all the evidence in a light most favorable to the prosecution. "In determining whether the evidence is legally sufficient to support the jury verdict as a matter of law, '[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.' " *State v. Robinson*, 124 Ohio St.3d 76, 2009-Ohio-5937, ¶ 34, quoting *Jenks*, 61 Ohio St.3d at paragraph two of the syllabus.

{¶ 52} When reviewing a case under a sufficiency of evidence standard, we do not weigh witnesses' credibility but presume that the state's witnesses were truthful and determine if their testimony satisfies the requisite elements of the crime. *Wright* at ¶ 17, citing *State v. Bankston*, 10th Dist. No. 08AP-668, 2009-Ohio-754, ¶ 4. We will not reverse a verdict on appeal based on insufficient evidence unless "reasonable minds could not reach the conclusion reached by the trier-of-fact." *State v. Dennis*, 79 Ohio St.3d 421, 430 (1997).

{¶ 53} Because we found the state established overwhelming evidence of appellant's guilt outside the improper remarks by the prosecutor, we also find that that evidence was sufficient to support the jury's guilty verdict for illegal voting. Accordingly, we overrule appellant's third and fifth assignments of error.

### D. Appellant's Fourth Assignment of Error

{¶ 54} Finally, appellant contends his conviction of illegal voting was against the manifest weight of the evidence. For the following reasons, we disagree.

{¶ 55} When considering an assignment of error under a manifest-weight standard, we may not substitute our views for that of the trier of fact but consider the entire record and weigh the evidence and credibility of the witnesses to determine if the trier of fact clearly lost its way. *State v. Steward*, 10th Dist. No. 19AP-35, 2019-Ohio-5258, ¶ 18, citing *State v. Patterson*, 10th Dist. No. 15AP-1117, 2016-Ohio-7130, ¶ 34. "Even though supported by sufficient evidence, a conviction may still be reversed as being against the manifest weight of the evidence." *State v. McCombs*, 10th Dist. No. 15AP-245, 2015-Ohio-

3848, ¶ 3. Reversal of a conviction under a manifest-weight standard is reserved for only the most " ' "exceptional case in which the evidence weighs heavily against the conviction." ' " *State v. Wilks*, 154 Ohio St.3d 359, 2018-Ohio-1562, ¶ 169, quoting *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997), quoting *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist.1983).

{¶ 56} When reviewing evidence under a manifest-weight standard, we may consider the credibility of the witnesses. *State v. Young*, 10th Dist. No. 18AP-630, 2020-Ohio-462, ¶ 71, citing *State v. Cattledge*, 10th Dist. No. 10AP-105, 2010-Ohio-4953, ¶ 6. When considering the credibility of the witnesses under the manifest-weight standard, we presume that the jury is best equipped to "view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony." *Seasons Coal Co., Inc. v. Cleveland*, 10 Ohio St.3d 77, 80 (1984). As such, we defer to "the jury's determination of witness credibility." *State v. Albert*, 10th Dist. No. 14AP-30, 2015-Ohio-249, ¶ 14. A determination that a witness is not credible on review is insufficient to reverse a verdict based on the manifest-weight standard. *Steward* at ¶ 19, citing *State v. Harris*, 10th Dist. No. 13AP-770, 2014-Ohio-2501, ¶ 25, *appeal not allowed*, 140 Ohio St.3d 1455, 2014-Ohio-4414, citing *State v. G.G.*, 10th Dist. No. 12AP-188, 2012-Ohio-5902, ¶ 7.

{¶ 57} Appellant argues Kelly's testimony was the only evidence that could have been construed by the jury to demonstrate that appellant cast a vote. Appellant continues by arguing that Kelly lacked the personal knowledge of the board of elections' procedures in 2012 and had only been in his post for a few months. When a factual issue hinges on a determination of a witness's credibility, unless under extraordinary circumstances, we will not reverse a factual determination as against the manifest weight of the evidence. *Steward* at ¶ 27, citing *In re L.J.*, 10th Dist. No. 11AP-495, 2012-Ohio-1414, ¶ 21. " ' "The trier of fact is in the best position to take into account inconsistencies, along with the witnesses' manner and demeanor, and determine whether the witnesses' testimony is credible." ' " *Steward* at ¶ 27, quoting *State v. Oteng*, 10th Dist. No. 14AP-466, 2015-Ohio-1231, ¶ 72, quoting *State v. Williams*, 10th Dist. No. 08AP-719, 2009-Ohio-3237, ¶ 16.

{¶ 58} Based on our review of the entire record, we find the jury did not lose its way to create a manifest miscarriage of justice in this case. Here, the jury had to determine

whether appellant voted or attempted to vote based on the board of elections' documents and credibility of the witnesses. As we have previously discussed, even excluding Kelly's testimony outside the improper question, there is overwhelming evidence in the record to support the determination made by the jury. The envelope signed by appellant declared a ballot was included inside the envelope. The parties stipulated it was indeed appellant's signature on the envelope. The jury was in the best position to assess Kelly's credibility and could have considered the amount of time Kelly was employed with the board of elections in its decision. Accordingly, we cannot say the jury created a manifest miscarriage of justice warranting a reversal of appellant's conviction. Therefore, appellant's illegal voting conviction is not against the manifest weight of the evidence.

{¶ 59} Accordingly, we overrule appellant's fourth assignment of error.

## IV. CONCLUSION

{¶ 60} Having overruled appellant's five assignments of error, we affirm the judgment of the Franklin County Court of Common Pleas.

*Judgment affirmed.*

BROWN and DORRIAN, JJ., concur.

_____