[Cite as *State v. Fabal*, 2021-Ohio-1793.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State of Ohio, | : | |
| Plaintiff-Appellee, | : | |
| | | No. 20AP-86 |
| v. | : | (C.P.C. No. 17CR-4062) |
| Andrew Fabal, | : | (REGULAR CALENDAR) |
| Defendant-Appellant. | : | |

D E C I S I O N

Rendered on May 25, 2021

**On brief:** [*G. Gary Tyack*], Prosecuting Attorney, and *Sheryl L. Prichard*, for appellee. **Argued:** *Sheryl L. Prichard*.

**On brief:** *Blaise G. Baker*, for appellant. **Argued:** *Blaise G. Baker*.

APPEAL from the Franklin County Court of Common Pleas

KLATT, J.

{¶ 1} Defendant-appellant, Andrew Fabal, appeals from a judgment of conviction and sentence entered by the Franklin County Court of Common Pleas pursuant to jury verdicts finding him guilty of aggravated vehicular homicide and failure to stop after an accident. For the following reasons, we affirm that judgment.

{¶ 2} On July 17, 2017, appellant was charged by complaint in the Franklin County Municipal Court with aggravated vehicular homicide and failure to stop after an accident. Appellant subsequently waived preliminary hearing and was bound over to the Franklin County Court of Common Pleas. Thereafter, he was indicted on September 15, 2017 on one count of aggravated vehicular homicide in violation of R.C. 2903.06, a second-degree

felony, and one count of failure to stop after an accident in violation of R.C. 4549.02, a third-degree felony.

{¶ 3}   Appellant entered a not guilty plea and requested a jury trial.  At a trial held in February 2020, plaintiff-appellee, State of Ohio, presented the following evidence.

{¶ 4}   On July 15, 2017, Ali Ikhayel operated two automobile-related businesses on the far west side of Columbus—one at 3334 West Broad Street ("3334")—the other next door at 3344 West Broad Street ("3344").  Appellant worked for Ikhayel as a subcontractor performing body work in the garage inside 3344.

{¶ 5}   Shortly after 10:30 p.m. on July 15, 2017, Denise Nunziato was struck and killed by an automobile as she crossed West Broad Street near the 3334/3344 businesses. The driver left the scene without stopping.  Bystanders told responding Columbus Police Officers Karen Blair and Ricky Anderson that footage from a security camera at 3334 showed a yellow car strike Nunziato and then drive into the garage at 3344.  The group further reported that the yellow car belonged to a person named "Andrew."  (Feb. 3, 2020 Tr. at 109.)  After obtaining permission to enter 3344, the officers observed a yellow car parked inside the garage which appeared to recently have sustained significant damage to the windshield and front end.  The officers found no one inside the garage.

{¶ 6}   Columbus Police Detective Connie Brant led the investigation into the accident.  Brant took numerous photographs of the accident scene and the yellow car. Pursuant to a valid search warrant and at Brant's direction, the yellow car was towed to a police garage.  Photographs taken there depict Brant demonstrating that several large pieces of debris found at the accident scene appeared to have been dislodged from the yellow car during the accident.  Pursuant to examination of the vehicle by the crime scene search unit, several fingerprints were lifted from the hood of the car; two were determined to belong to appellant.  At trial, Brant acknowledged that it was difficult to determine when any of the fingerprints, including appellant's, had been left on the car.  She further acknowledged that the fingerprints other than appellant's could not be identified and that no attempts were made to obtain fingerprints from the car's interior.

{¶ 7}   Brant also reviewed the security footage obtained from 3334 and two nearby businesses.  According to Brant, the security footage revealed that the car that struck Nunziato was "very, very bright yellow and * * * moving very fast * * * [r]elative to the traffic

in general that was on the roadway." *Id.* at 140. Brant further testified that the speed limit at the accident scene was 35 miles per hour.

{¶ 8} Brant's investigation revealed that the yellow car was registered to Walter Salvador Guardado Abarca. At trial, Abarca testified that during an interview with police, he averred that the yellow car was "under my name but it was a long time ago." *Id.* at 158. He further stated that he sold the car with the help of his brother but did not know who purchased it.

{¶ 9} Brant also interviewed several witnesses—Ikhayel, Nicole Leard, Charles Yeck, and Dominic Brewer—all of whom testified at trial. Ikhayel identified appellant at trial as the person he knew as "Andrew" who worked at 3344 and with whom he interacted on a regular basis. Appellant had a key to the 3344 garage and kept a small yellow car there. Ikhayel often saw appellant driving the car and "believe[d]" appellant owned it. *Id.* at 179. Ikhayel further stated that the police notified him of the accident shortly after it occurred. He drove to his West Broad Street businesses and reviewed the footage recovered from the security camera at 3334. When shown the security footage at trial, Ikhayel asserted that it depicted a person who "looked like Andrew" close the hood of the yellow car before driving it away. (Feb. 4, 2020 Tr. at 184.)

{¶ 10} Leard testified that she was at 3334 visiting her fiancé, Brewer, at the time of the accident. Although she did not witness the accident, she reviewed the security footage from 3334. Leard recognized the yellow car that struck Nunziato as one she had seen near 3334 and 3344 on two prior occasions; however, she acknowledged that she "didn't really get a good look at the driver." *Id.* at 169.

{¶ 11} Yeck testified that late in the evening on July 15, 2017, he observed a yellow car travel eastbound on West Broad Street and strike Nunziato. The impact dislodged several pieces of the car, including the front bumper, and caused the driver to momentarily lose control of the vehicle. Once the driver regained control, he made a U-turn, stopped momentarily, looked at Nunziato's body, and then drove westbound on West Broad Street. Yeck called 911 and reported the accident; he remained at the scene and described the driver as an African American man, approximately 25 to 30 years old, sitting "really low in his car." *Id.* at 195. The driver had a "flattop fade," which Yeck described at trial as "real tight on the side of the hair," with no "braids" or "dreads." *Id.* at 195, 202. On July 23, 2017,

eight days after the accident, the police showed Yeck a photo array, which, according to Brant's testimony, included a photograph of appellant wearing "little curly cues on the sides" of his head. *Id.* at 137. Yeck testified that he was unable to identify the driver from the photo array and that he presently could not identify the driver.

{¶ 12} Brewer testified that he worked at 3334. He often saw a person he knew as "Andrew" working in the garage located next door at 3344, and the two occasionally engaged in conversation. At trial, Brewer identified appellant as "Andrew." *Id.* at 218. According to Brewer, appellant drove a yellow car that "was always over" at 3344. *Id.* at 226. To Brewer's knowledge, appellant did not permit anyone else to drive the yellow car.

{¶ 13} On July 15, 2017, Brewer and his cousin were working at 3334 late in the evening. He observed 10 to 15 people having a cookout next door at 3344. He did not attend the cookout and because it was dark, he could not discern the race or ethnicity of the attendees or whether appellant was there. He eventually became aware that there had been an accident on West Broad Street. He did not hear or see the accident because he was working inside 3334. After the accident, Brewer's cousin facilitated police entrance into the garage at 3344. The yellow car was inside the garage; neither appellant nor anyone else was around. Along with the police, Brewer reviewed the security footage obtained from the security cameras at 3334. At that time, Brewer could not identify appellant because he was standing behind several police officers and "didn't see [the video] close enough." *Id.* at 237. However, Brewer again reviewed the security footage from 3334 and the other businesses in preparation for his trial testimony. Pursuant to that review, Brewer testified that a person who "looked like Andrew" closed the hood on the yellow car and drove away. *Id.* at 228, 237. Thereafter, the yellow car struck Nunziato and then returned to 3344. Brewer averred that although the driver's face was "too blurred" to be recognized, the driver's body shape and size matched appellant's. *Id.* at 240. Brewer also testified that the security footage depicted a sandal on the street near the accident scene, and that appellant "always wore sandals." *Id.* at 227.

{¶ 14} In addition to the foregoing testimony, the state presented the surveillance footage from the security cameras at 3334 and the two neighboring businesses. (State's Ex. 95.) That footage depicts a group of young African American males gathered around a small yellow car with a raised hood parked in a driveway adjacent to the 3334/3344 building.

One of the men closes the hood, enters the car, and drives away. Very shortly thereafter, the yellow car, traveling eastbound at a high rate of speed, strikes Nunziato as she attempts to cross West Broad Street. The impact causes Nunziato's body to be tossed into the air and thrown a considerable distance. The driver does not stop at the scene; rather, he returns to 3344 very shortly after the accident and drives behind the building.

{¶ 15} The state also presented numerous exhibits as well as 13 stipulations pertaining to those exhibits, including fire department records, police procedures and processes related to the investigation, bureau of motor vehicle records, and the coroner's report. The stipulated evidence, along with the attendant exhibits, established, among other things, that at the time of the accident, appellant's driver's license was under suspension, the yellow car was traveling 66 miles per hour when it struck Nunziato, Nunziato's body was thrown 10 feet into the air, was airborne for 89 feet, and was propelled a total of 131 feet from the point of impact, and the car was registered to Abarca.

{¶ 16} At the conclusion of the state's case, appellant moved for judgment of acquittal pursuant to Crim.R. 29. The trial court denied appellant's motion. Thereafter, appellant rested his case without presenting evidence and renewed his Crim.R. 29 motion. The trial court again denied the motion.

{¶ 17} Following deliberations, the jury returned verdicts finding appellant guilty as charged in the indictment. At a sentencing hearing held immediately after the verdicts were rendered, the trial court sentenced appellant to eight years' incarceration on the aggravated vehicular homicide conviction, and three years' incarceration on the failure to stop after an accident conviction. The court ordered the sentences to be served consecutively, resulting in an aggregate prison term of 11 years. The trial court also imposed a lifetime suspension of appellant's driver's license. The trial court memorialized the conviction and sentence in a judgment entry filed February 7, 2020.

{¶ 18} In a timely appeal, appellant advances two assignments of error for review:

> [I]. The trial court violated Defendant-Appellant's rights to due process and a fair trial when in the absence of sufficient evidence the trial court found Defendant-Appellant guilty of aggravated vehicular homicide and failure to stop after an accident.

> [II]. Defendant-appellant was deprived of due process of law and a fair trial as his convictions for aggravated vehicular

homicide and failure to stop after an accident were against the
manifest weight of the evidence.

{¶ 19} In his first assignment of error, appellant contends that his convictions for aggravated vehicular homicide and failure to stop after an accident are not supported by sufficient evidence. We disagree.

{¶ 20} Sufficiency of the evidence is the legal standard that tests whether the evidence introduced at trial is legally adequate to support a verdict. *State v. Kurtz*, 10th Dist. No. 17AP-382, 2018-Ohio-3942, ¶ 15, citing *State v. Thompkins*, 78 Ohio St.3d 380, 386. "Whether the evidence is legally sufficient to support a verdict is a question of law, not fact." *Id.*, citing *Thompkins* at 386. In determining whether the evidence is legally sufficient to support a verdict, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus, following *Jackson v. Virginia*, 443 U.S. 307 (1979).

{¶ 21} "In a sufficiency of the evidence inquiry, appellate courts do not assess whether the prosecution's evidence is to be believed but whether, if believed, the evidence supports the conviction." *Kurtz* at ¶ 16, citing *State v. Yarbrough*, 95 Ohio St.3d 227, 2002-Ohio-2126, ¶ 79-80. "The court essentially assumes the state's witnesses testified truthfully and determines whether that testimony satisfies each element of the crime." *State v. Davis,* 10th Dist. No. 18AP-921, 2019-Ohio-4692, ¶ 38, citing *State v. Bankston*, 10th Dist. No. 08AP-668, 2009-Ohio-754, ¶ 4.

{¶ 22} Ohio's aggravated vehicular homicide statute provides in relevant part: "No person, while operating or participating in the operation of a motor vehicle * * * shall cause the death of another * * * recklessly." R.C. 2903.06(A)(2)(a). Thus, pursuant to R.C. 2903.06(A)(2)(a), the prosecution was required to prove the following elements to secure a conviction in this matter: (1) appellant operated a motor vehicle, (2) in a reckless manner, (3) which caused the death of another. *State v. Swihart*, 3d Dist. No. 14-12-25, 2013-Ohio-4645, ¶ 50, citing *State v. Wheeler*, 6th Dist. No. L-06-1125, 2007-Ohio-6375, ¶ 19.

{¶ 23} R.C. 4549.02(A) sets forth the elements of failure to stop after an accident, and, for purposes of the instant case, the prosecution was required to prove that appellant:

(1) was the driver of a vehicle involved in an accident with a person on a public road, (2) had knowledge of the accident, and (3) failed to remain at the scene of the accident until providing his name and driver's license, and, if he was not the owner, providing the vehicle owner's name and the vehicle's registration number.

{¶ 24} Appellant does not contest the evidence establishing that on July 15, 2017, someone driving a yellow car eastbound on West Broad Street at 66 miles per hour in a 35-miles-per-hour speed zone struck and killed Nunziato as she attempted to cross the street and then failed to stop at the scene. Appellant does not argue that such evidence is insufficient to prove the elements of the offenses for which he was convicted. Rather, appellant argues that the prosecution failed to prove that he was the person driving the yellow car when it struck and killed Nunziato.

{¶ 25} In support of this argument, appellant points out that he never admitted that he was involved in the accident and did not testify at trial. He further asserts that the surveillance footage was fairly low quality and often blurred and, therefore, did not definitively identify him as the driver. He also notes that although the prosecution presented forensic evidence establishing that his fingerprints were found on the hood of the yellow car, no forensic evidence established that he was actually inside the car or drove the car. Appellant further maintains that no evidence was presented to demonstrate that he owned the yellow car. Finally, appellant argues that none of the testifying witnesses definitively identified him as the driver. Appellant notes that Ikhayel, Brewer, and Yeck averred only that the driver resembled appellant and based their identifications solely upon skin color, clothing, or hairstyle. Appellant further notes that Yeck was unable to identify appellant from a photo array presented only eight days after the accident, and could not identify him at trial.

{¶ 26} The prosecution in a criminal matter must prove every element of the crime charged beyond a reasonable doubt, including the identity of the person who committed the crime. *State v. Tate*, 140 Ohio St.3d 442, 2014-Ohio-3667, ¶ 15; *State v. Johnson*, 9th Dist. No. 13CA010496, 2015-Ohio-1689, ¶ 13 (identity of the perpetrator is an essential element that must be proved beyond a reasonable doubt). As with any other element of a crime, identity of the perpetrator may be established by direct or circumstantial evidence. *State v. Watkins*, 10th Dist. No. 14AP-807, 2016-Ohio-1029, ¶ 22, citing *State v. Mickens*,

10th Dist. No. 08AP-626, 2009-Ohio-1973, ¶ 18. Direct evidence exists when "a witness testifies about a matter within the witness's personal knowledge such that the trier of fact is not required to draw an inference from the evidence to the proposition that it is offered to establish." *State v. Cassano*, 8th Dist. No. 97228, 2012-Ohio-4047, ¶ 13. Circumstantial evidence, on the other hand, is the " 'proof of facts by direct evidence from which the trier of fact may infer or derive by reasoning other facts in accordance with the common experience of mankind.' " *State v. Wright*, 10th Dist. No. 19AP-770, 2019-Ohio-5201, ¶ 22, quoting *State v. Robinson*, 10th Dist. No. 17AP-5, 2018-Ohio-1809, ¶ 20. (Further citations omitted.)

**{¶ 27}** Direct and circumstantial evidence are of equal evidentiary value. *Robinson* at ¶ 20, citing *Jenks*, 61 Ohio St.3d at 272. "Although there are obvious differences between direct and circumstantial evidence, those differences are irrelevant to the probative value of the evidence." *Cassano* at ¶ 13, citing *State v. Treesh*, 90 Ohio St.3d 460, 485 (2001). " '[C]ircumstantial evidence is sufficient to obtain a conviction if that evidence would convince the average mind of the defendant's guilt beyond a reasonable doubt.' " *Wright* at ¶ 22, quoting *State v. Heinish*, 50 Ohio St.3d 231, 238 (1990). Indeed, in some cases, "circumstantial evidence may be more certain, satisfying and persuasive than direct evidence." *State v. McClurkin*, 10th Dist. No. 11AP-944, 2013-Ohio-1140, ¶ 43, citing *State v. Ballew*, 76 Ohio St.3d 244, 249 (1996).

**{¶ 28}** Appellant accurately states that the prosecution's case against him is entirely circumstantial. No one testified that they observed appellant driving the yellow car that struck and killed Nunziato. However, the circumstantial evidence in this case is sufficient to prove, beyond a reasonable doubt, that appellant was the driver. Appellant worked for Ikhayel in the garage at 3344 and kept a small yellow car there. Both Ikhayel and Brewer knew appellant, interacted with him on a regular basis, and often saw him driving the yellow car. Brewer did not think appellant permitted anyone else to drive it. The bystanders who spoke to the responding officers reported that the yellow car belonged to a person named "Andrew."

**{¶ 29}** The surveillance footage depicts a person Ikhayel and Brewer testified "looked like" appellant standing outside the 3344 garage near the yellow car, closing the hood on the car, and then driving away. (Feb. 4, 2020 Tr. at 228.) Very shortly thereafter,

the yellow car strikes Nunziato and then returns to the 3344 garage. Police subsequently discovered the yellow car inside the garage; appellant's fingerprints were on the hood of the car. A sandal of the type often worn by appellant was found near the accident scene.

{¶ 30} As noted above, appellant premises his insufficiency argument on several bases, none of which are persuasive. That appellant never admitted to being involved in the accident and did not testify at trial does not negate the circumstantial evidence presented by the prosecution. Further, contrary to appellant's assertion, the surveillance footage is of suitable quality to prove appellant's identity as the driver of the yellow car. The footage from the camera at 3334 is in color and clearly depicts the yellow car parked in front of the 3344 garage. The footage also clearly depicts the person identified by Ikhayel and Brewer as resembling appellant close the hood on the yellow car and drive it away. The footage also clearly shows the yellow car return to the garage very shortly after the accident. Although the surveillance footage from the security cameras that captured the actual accident is in black and white, is somewhat grainy, and does not definitively depict the driver of the car, the footage depicts a car of the same shape and size as the yellow car that struck Nunziato. The surveillance footage, viewed in toto, and coupled with the testimony of Ikhayel and Brewer, circumstantially proves appellant to be the driver.

{¶ 31} As to appellant's assertion that the prosecution failed to establish that appellant's fingerprints were on the interior of the yellow car, we note that this court's " 'function when reviewing the sufficiency of the evidence to support a criminal conviction is to "*examine the evidence admitted at trial*" to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt.' " (Emphasis sic.) *State v. Wilks*, 154 Ohio St.3d 359, 2018-Ohio-1562, ¶ 167, quoting *Jenks* at paragraph two of the syllabus. The fact that the prosecution did not present a particular type of evidence does not negate the sufficiency of the identification evidence the prosecution did present. *Id.* at ¶ 166, citing *State v. Dye*, 9th Dist. No. 17763 (Mar. 12, 1997).

{¶ 32} Further, while appellant's argument suggests that the police failed to investigate all potential leads in this case, failure to exhaust all leads is not tantamount to insufficient evidence. *Johnson*, 8th Dist. No. 97698, 2012-Ohio-3812, ¶ 21. There is no accepted standard procedure governing police investigations. *State v. Komora*, 11th Dist.

No. 96-G-1994 (Apr. 4, 1997). The impact of the failure to fingerprint the interior of the yellow car was a question of fact for the jury. *Id.*, citing *State v. Knight*, 5th Dist. No. CA-5699 (Dec. 9, 1981).

{¶ 33} In addition, that the prosecution did not definitively establish appellant's ownership of the yellow car does not render the identification of him as the driver of the car insufficient. The aggravated vehicular homicide statute prohibits a person from "operating" a motor vehicle in a reckless manner. The statute does not require that the prosecution prove that the operator owned the motor vehicle. Similarly, the failure to stop after an accident statute does not require the prosecution to prove that the driver owns the vehicle; indeed, the statute specifically contemplates circumstances where the driver is not the owner. *See* R.C. 4549.02(A).

{¶ 34} In essence, appellant contends that the prosecution's identification evidence could have and should have been better than it was. Even if that is true, however, the prosecution need only present sufficient evidence, not the best possible evidence, to survive a challenge on insufficient evidence grounds. *Wilks*, 154 Ohio St.3d 359, 2018-Ohio-1562, at ¶ 166, citing *Dye*, 9th Dist. No. 17763 (Mar. 12, 1997). In reviewing the evidence presented in a light most favorable to the prosecution, as we are required to do under a sufficiency analysis, a reasonable trier of fact could have found, beyond a reasonable doubt, sufficient circumstantial evidence of identity, and therefore, sufficient evidence to support the elements of the crimes for which appellant was convicted.

{¶ 35} The first assignment of error is overruled.

{¶ 36} In his second assignment of error, appellant contends his convictions are against the manifest weight of the evidence. Again, we disagree.

{¶ 37} In contrast to the sufficiency of the evidence, the weight of the evidence concerns the inclination of the greater amount of credible evidence offered to support one side of the issue rather than the other. *Thompkins*, 78 Ohio St.3d at 387. Although there may be sufficient evidence to support a judgment, an appellate court may nevertheless conclude that a judgment is against the manifest weight of the evidence. *Id.*

{¶ 38} When presented with a manifest weight challenge, an appellate court engages in a limited weighing of the evidence to determine whether sufficient competent, credible evidence supports the jury's verdict. *State v. Salinas*, 10th Dist. No. 09AP-1201, 2010-

Ohio-4738, ¶ 32, citing *State v. Conley*, 10th Dist. No. 93AP-387 (Dec. 16, 1993); *Thompkins* at 387. "When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the manifest weight of the evidence, the appellate court sits as a 'thirteenth juror' and disagrees with the factfinder's resolution of the conflicting testimony." *Thompkins* at 387, citing *Tibbs v. Florida*, 457 U.S. 31, 42 (1982). However, "in conducting our review, we are guided by the presumption that the jury, or the trial court in a bench trial, 'is best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony." *State v. Cattledge*, 10th Dist. No. 10AP-105, 2010-Ohio-4953, ¶ 6, quoting *Seasons Coal Co. v. Cleveland*, 10 Ohio St.3d 77, 80 (1984). Accordingly, this court affords great deference to the jury's determination of witness credibility. *State v. Redman*, 10th Dist. No. 10AP-654, 2011-Ohio-1894, ¶ 26, citing *State v. Jennings*, 10th Dist. No. 09AP-70, 2009-Ohio-6840, ¶ 55.

{¶ 39} An appellate court considering a manifest weight challenge "may not merely substitute its view for that of the trier of fact, but must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses, and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Harris*, 10th Dist. No. 13AP-770, 2014-Ohio-2501, ¶ 22, citing *Thompkins* at 387, citing *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist.1983). An appellate court should reserve reversal of a conviction as being against the manifest weight of the evidence for only the most " 'exceptional case in which the evidence weighs heavily against the conviction.' " *Thompkins* at 387, quoting *Martin* at 175.

{¶ 40} Appellant's manifest weight challenge is based on the same grounds raised in his sufficiency argument. That appellant never admitted involvement in the accident and did not testify at trial is an issue for the jury's consideration. So, too, is the credibility and certainty of the identifications of appellant as the driver of the yellow car that were provided by Yeck, Ikhayel, and Brewer. "While identity is an element that must be proven by the state beyond a reasonable doubt, the credibility of witnesses and their degree of certainty in identification are matters affecting the weight of the evidence." *State v. Reed*, 10th Dist. 08AP-20, 2008-Ohio-6082, ¶ 48. " 'A witness need not be free from doubt when

identifying the perpetrator of a crime.' " *State v. Tucker*, 10th Dist. No. 15AP-434, 2016-Ohio-1033, ¶ 13, quoting *State v. Cameron*, 10th Dist. No. 10AP-240, 2010-Ohio-6042, ¶ 31. The jury is free to believe all, part, or none of a witness's testimony. *State v. Moore*, 10th Dist. No. 19AP-464, 2021-Ohio-1379, ¶ 34. " 'Juries are not so susceptible that they cannot measure intelligently the weight of identification testimony that has some questionable feature.' " *State v. Coleman*, 10th Dist. No. 99AP-1387 (Nov. 21, 2000), quoting *Manson v. Brathwaite*, 432 U.S. 98, 116 (1977). Here, the jury was in the best position to assess the evidence offered at trial in finding the witnesses' identification testimony to be credible, and such determination is entitled to great deference from a reviewing court. *State v. Taylor*, 10th Dist. No. 14AP-254, 2015-Ohio-2490, ¶ 37.

**{¶ 41}** Further, regarding the police failure to obtain fingerprint evidence from the interior of the yellow car, we note that "[t]he weight to be given any failure by the police officers to employ adequate investigative techniques is for the jury to determine." *Komora*, 11th Dist. No. 96-G-1994 (Apr. 4, 1997), citing *State v. Larry*, 10th Dist. No. 95APA11-1416 (June 25, 1996). Finally, as to the quality and evidentiary value of the surveillance footage, we note that the jury observed all of the surveillance footage during the trial and, given the jury's request during deliberations for a "computer mouse" and the trial court's acquiescence in that request, we presume the jury reviewed the surveillance footage. (Feb. 5, 2020 Tr. at 318.) The jury was free to assign the weight to be afforded the surveillance footage.

**{¶ 42}** In light of the circumstantial evidence presented at trial, we cannot say that the jury clearly lost its way in concluding that appellant was the driver of the yellow car that struck and killed Nunziato and then fled the scene. Accordingly, appellant's convictions are not against the manifest weight of the evidence.

**{¶ 43}** The second assignment of error is overruled.

**{¶ 44}** Having overruled appellant's first and second assignments of error, we hereby affirm the judgment of the Franklin County Court of Common Pleas.

*Judgment affirmed.*

BROWN and MENTEL, JJ., concur.