[Cite as *State v. Paro*, 2021-Ohio-4326.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State of Ohio, | : | |
| Plaintiff-Appellee, | : | |
| | | No. 21AP-50 |
| v. | : | (C.P.C. No. 19CR-4322) |
| Fisk R. Paro, | : | (REGULAR CALENDAR) |
| Defendant-Appellant. | : | |

D E C I S I O N

Rendered on December 9, 2021

**On brief:** *G. Gary Tyack*, Prosecuting Attorney, and *Michael P. Walton*, for appellee.

**On brief:** *Brian J. Rigg*, for appellant.

APPEAL from the Franklin County Court of Common Pleas

MENTEL, J.

{¶ 1} Defendant-appellant, Fisk R. Paro, appeals the judgment of the Franklin County Court of Common Pleas finding appellant guilty of one count of attempted burglary.

{¶ 2} For the reasons that follow, we affirm.

## I. FACTS AND PROCEDURAL HISTORY

{¶ 3} On August 29, 2019, appellant was indicted by a Franklin County Grand Jury on one count of attempted burglary in violation of R.C. 2923.02/2911.12, a felony of the third degree. On September 3, 2019, appellant entered a plea of not guilty.

{¶ 4} This case was set for trial on October 30, 2020. Following a jury waiver, the case proceeded with a bench trial. The following testimony was adduced at trial.

{¶ 5} Brian Castell testified that he has been a patrol officer with the Columbus Police Department ("CPD") for 14 years. (Oct. 30, 2020[1] Tr. at 7.) On August 19, 2019, Castell responded to a call around 11:53 p.m. of an ex-boyfriend attempting to enter an apartment through a window. Castell arrived at the residence and spoke with the victim in this case, J.S. According to Castell, J.S. stated her ex-boyfriend, appellant, had been outside her apartment, knocking on the door, ringing the doorbell, and trying to enter the home through the window. Castell then called Detective Carl Covey who arrived at the scene. Castell testified that he observed damage to the window where appellant attempted to enter the home. Castell noted that the damage was to the frame of the window, but the glass of the window was intact. Castell testified as to photographs taken of the apartment and window located to the side of the door. According to Castell, J.S. was physically upset at the situation and concerned about the individual that was at her residence. "She was scared." (Tr. at 14.)

{¶ 6} On cross-examination, Castell conceded that he was not at the scene during the incident and could not identify the damage to the window in the photograph marked as Exhibit A2. On re-direct, Castell stated that due to the time of day and position the photograph was taken, he could not see the damage in the picture, but he observed the window frame was "bowed out" at the time of the offense. (Tr. at 17.) Castell did acknowledge that he had not observed the condition of the window before he arrived that night.

{¶ 7} Ryan Vanfossan testified that he has been a patrol officer employed by CPD for roughly 16 years. On August 19, 2019, Vanfossan stated that he was working on the third shift and responded to a call regarding a domestic disturbance. Vanfossan testified that, on the run, he was informed the suspect was driving a tan Honda CR-V. According to Vanfossan, when he arrived at the scene the vehicle was backing out of a parking spot, and he initiated a traffic stop at that time. Vanfossan made contact with the driver who was identified in the courtroom as the appellant in this case.

{¶ 8} According to Vanfossan, appellant stated he was a Lyft driver and had just dropped someone off in the area. "And then he later went on to say that he was over at

---

[1] The transcript for the bench trial erroneously has the date listed as October 30, 2021 instead of October 30, 2020.

[J.S.'s] house, and he had thrown a latte on the front door of her house, and he washed it off with a garden house." (Tr. at 20.) Vanfossan stated that he then detained appellant and put him in the back of his cruiser car. Vanfossan testified as to images of the vehicle and identified appellant as the driver he detained on August 19, 2019.

{¶ 9} Plaintiff-appellee, State of Ohio, next called J.S. to testify in the case. According to J.S., she had met appellant online, and they had dated periodically from 2017-2019. (Tr. at 27.) By July 2019, they were no longer together. J.S. stated that around this time, appellant started to repeatedly call, send text messages, and was coming over to her home unannounced. According to J.S., appellant would text her or show up at her home "banging on the door, ringing the doorbell" for over one hour. (Tr. at 30.) J.S. stated that this behavior would occur every night, but it was not as extended as August 19, 2019. (Tr. at 30.) J.S. testified on that on the night in question, around 10:20 p.m., appellant began texting that he was going to come over and was bringing a gun to "show [her] how to use it." (Tr. at 66.) J.S. was aware that appellant had access to firearms because he would go to the shooting range. Appellant also told her "he was going to drag [her] out of the apartment." (Tr. at 66.) J.S. called the non-emergency line and told the dispatcher that appellant had told her he had a firearm and was coming to her home.

{¶ 10} J.S. stated that appellant arrived at or around 10:40 p.m. and began banging on the door, ringing the doorbell, and calling her cell phone. J.S. testified that appellant tried to use the water hose to break the window. J.S. spoke to appellant on the phone to keep him on the line until law enforcement arrived but her phone died and the call was disconnected. J.S. stated that her phone eventually recharged, and she called the 911 operator. According to J.S., the operator told her that it was not considered an emergency until appellant was in the home. J.S. testified: "Then I called the police again to see if anybody was coming, because it had been like 40 minutes. I'm like he's throwing his body into the door. There was a chair out front that he had placed there that he would sit in sometimes when he would wait for me to come outside, and he threw that against the window. He tried to pry open the back door. He tried to pry open the window." (Tr. at 33-34.) J.S. also testified that appellant defecated on the door during the incident.

{¶ 11} After the 911 call, J.S. started to record a video of the incident. The video was played for the court. J.S. identified appellant as the individual in the video. (Tr. at 40, 51.)

J.S. testified that appellant left around 11:57 p.m.  J.S. states a few minutes later, she heard a knock at the door from a police officer.  (Tr. at 43.)  J.S. provided the officer a description of appellant's clothes and identified appellant's vehicle as a tan Honda CR-V.  J.S. testified that she moved shortly after the incident.  J.S. stated that appellant damaged the doorframe and her window, and she was not aware of any damage to the window prior to August 19, 2019.

{¶ 12}  On cross-examination, J.S. acknowledged that she did not mention that appellant tried to pry open the back door or appellant throwing a chair in her statement to police.  (Tr. at 53, 55.)  J.S. stated that at no point did she observe appellant carrying a firearm or crowbar and that appellant never gained entry into the home.  On redirect examination, J.S. clarified that she included in her statement that appellant attempted to go through the back door.  (Tr. at 66.)  J.S. also stated she was in the apartment when appellant threatened her that night.

{¶ 13}  Carl Covey testified that he was a detective with CPD working in the property crimes unit.  Covey testified that he responded to a call of an ex-boyfriend attempting to gain entry into a home and might be carrying a firearm.  (Tr. at 71.)  Covey testified to speaking with J.S., watching the video, observing the inside and outside of the home, and taking pictures of the scene.  Covey observed that "the window was bowed out a little bit. There were no scrape marks or anything, but you could tell that someone was tampering with it."  (Tr. at 73.)  Covey testified that the video played in the courtroom was what he viewed on August 19, 2019.  (Tr. at 78.)  Covey stated that he spoke with appellant who was detained in a cruiser.  Covey testified that he asked appellant if he had a firearm in the car, which appellant denied.

{¶ 14}  On cross-examination, Covey confirmed that the glass of the window was not broken. Covey conceded that he did not know the condition of the window before appellant's arrival that night.  Appellee closed its case and moved to admit its exhibits.  The exhibits were all admitted without objection.

{¶ 15}  At the conclusion of appellee's case, appellant moved for acquittal, pursuant to Crim.R. 29, contending that appellee had failed to meet its evidentiary burden. Specifically, appellant argued that appellee had failed to demonstrate that appellant had the requisite intent to come inside the habitation to commit any criminal offense.  The trial

court construing the evidence strongly in favor of appellee, as required by Crim.R. 29, found that there was sufficient evidence at that time to deny the Crim.R. 29 motion. Appellant declined to call any witnesses and renewed his Crim.R. 29 motion, which was, again, denied.

{¶ 16} At the conclusion of closing arguments, the trial court found appellant guilty of one count of attempted burglary in violation of R.C. 2923.02/ 2911.12, a felony of the third degree. The trial court stated: "I think the direct and circumstantial evidence is consistent and proves beyond a reasonable doubt that [appellant] did attempt to trespass in an occupied structure. The force was admittedly minor, but repeated efforts at the doors and the window were sufficient I think to constitute an attempt under [R.C.] 2923.02 and 2911.12." (Tr. at 99.) The trial court concluded that J.S. was a credible witness and law enforcement was able to corroborate that appellant was at the apartment complex on August 19, 2019. The trial court noted the most obvious criminal offense would be domestic, assault, or kidnapping given appellant's threat to drag her out of the house. (Tr. at 100.) The trial court ordered a presentence investigation, and the case was set for a sentencing hearing at a later date.

{¶ 17} On January 7, 2021, the trial court imposed an 18 months sentence of incarceration with 3 years of mandatory post-release control. Appellant was given 34 days of jail-time credit.

{¶ 18} Appellant filed a timely appeal.

## II.  ASSIGNMENTS OF ERROR

{¶ 19} Appellant assigns the following as trial court error:

> 1. THE TRIAL COURT ERRED WHEN IT DENIED DEFENDANT-APPELLANT'S [CRIM.]R. 29 MOTION FOR ACQUITTAL.
>
> 2. THE VERDICT OF ATTEMPTED BURGLARY WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

## III.  LEGAL ANALYSIS

### A. Appellant's First and Second Assignments of Error

{¶ 20} In appellant's first assignment of error, he argues that the trial court erred when it denied his motion for acquittal pursuant to Crim.R. 29. In appellant's second assignment of error, he contends that the conviction was against the manifest weight of the

evidence. For harmony of analysis, we will address both of appellant's assignments of error together.

{¶ 21} As set forth in Crim.R. 29(A), "[t]he court on motion of a defendant or on its own motion, after the evidence on either side is closed, shall order the entry of a judgment of acquittal of one or more offenses charged in the indictment, information, or complaint, if the evidence is insufficient to sustain a conviction of such offense or offenses." The legal standard of sufficiency of the evidence "tests whether the evidence introduced at trial is legally sufficient to support a verdict." *State v. Cassell*, 10th Dist. No. 08AP-1093, 2010-Ohio-1881, ¶ 36, citing *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997). Whether the evidence presented at trial is legally sufficient to support the verdict is a question of law, not fact. *State v. Fabal*, 10th Dist. No. 20AP-86, 2021-Ohio-1793, ¶ 20, quoting *State v. Kurtz*, 10th Dist. No. 17AP-382, 2018-Ohio-3942, ¶ 15, citing *Thompkins* at 386. When resolving whether the evidence is legally sufficient, " '[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.' " *State v. Robinson*, 124 Ohio St.3d 76, 2009-Ohio-5937, ¶ 34, quoting *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus, following *Jackson v. Virginia*, 443 U.S. 307 (1979). In a sufficiency of the evidence analysis, "appellate courts do not assess whether the prosecution's evidence is to be believed but whether, if believed, the evidence supports the conviction." *Kurtz* at ¶ 16, citing *State v. Yarbrough*, 95 Ohio St.3d 227, 2002-Ohio-2126, ¶ 79-80.

{¶ 22} As a motion under Crim.R. 29 questions the sufficiency of the evidence, we must apply the same standard of review as in a challenge on appeal to the sufficiency of the evidence. *State v. Guy*, 10th Dist. No. 17AP-322, 2018-Ohio-4836, ¶ 40, citing *State v. Kearns*, 10th Dist. No. 15AP-244, 2016-Ohio-5941, ¶ 44.

{¶ 23} Conversely, while sufficiency of the evidence tests the adequacy of whether the evidence presented is legally sufficient to support the verdict as a matter of law, manifest weight of the evidence considers the evidence's effect of inducing belief. *State v. Cassell*, 10th Dist. No. 08AP-1093, 2010-Ohio-1881, ¶ 38, citing *State v. Wilson*, 113 Ohio St.3d 382, 2007-Ohio-2202, ¶ 25, citing *Thompkins* at 386. Even if there is sufficient evidence to support a verdict, a reviewing court may still conclude that a judgment is against the

manifest weight of the evidence. *State v. McCombs*, 10th Dist. No. 15AP-245, 2015-Ohio-3848, ¶ 3, citing *Thompkins* at 387.

{¶ 24} An appellate court reviewing a manifest weight challenge "may not merely substitute its view for that of the trier of fact, but must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses, and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Harris*, 10th Dist. No. 13AP-770, 2014-Ohio-2501, ¶ 22, citing *Thompkins* at 387, citing *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist.1983). A reviewing court should reserve reversal of a criminal conviction based on the manifest weight of the evidence for the most exceptional case in which the evidence weighs profoundly against conviction. *State v. Cervantes*, 10th Dist. No. 18AP-505, 2019-Ohio-1373, ¶ 27.

{¶ 25} Appellant's sufficiency of the evidence argument is sparse to say the least.[2] Appellant's sole contention is that appellee did not prove appellant had the purpose to commit any criminal offense inside J.S.'s home. As such, our analysis will focus on that issue. Similarly, appellant's pithy manifest weight discussion amounts to arguing "the trial court lost its way in finding the Defendant-Appellant guilty of attempted burglary." (Appellant's Brief at 12.)[3]

{¶ 26} Having reviewed the trial transcript and relevant evidence presented at trial, appellant's conviction is supported by sufficient evidence and is not against the manifest weight of the evidence.

---

[2] The substance of appellant's argument is a single paragraph, which reads:
> The evidence presented was insufficient to convict Defendant-Appellant of attempted burglary. In O.R.C. 2923.02/2911.12 the state must prove that the offender did, by force, stealth, or deception, attempt to trespass in an occupied structure.....with the purpose to commit in habitation any criminal offense. The state did not prove that [Appellant]had the purpose to commit any criminal offense inside of [J.S.'s] residence. This is evidence is very weak and insufficient to sustain a conviction of attempted burglary.

(Sic. passim.)(Appellant's Brief at 10.)

[3] We note that appellant fails to identify evidence in the record that specifically identifies error. App.R. 16(A)(7) requires appellant to set forth "reasons in support of the contentions, with citations to the authorities, statutes, and parts of the record on which appellant relies." As appellant fails to set forth any specific arguments, under App.R. 12(A)(2), we may decline to address appellant's manifest weight argument. However, in the interest of justice, we consider the argument to the extent we can discern whether the trial court's ruling was against the manifest weight of the evidence based on the record.

{¶ 27} As set forth in Ohio's criminal attempt statute, "[n]o person, purposely or knowingly, and when purpose or knowledge is sufficient culpability for the commission of an offense, shall engage in conduct that, if successful, would constitute or result in the offense." R.C. 2923.02(A). The Supreme Court of Ohio has found that "criminal attempt" requires an act establishing a substantial step in a course of conduct planned to result in the actor's commission of the offense. *State v. Dean*, 146 Ohio St.3d 106, 2015-Ohio-4347, ¶ 175, quoting *State v. Group*, 98 Ohio St.3d 248, 2002-Ohio-7247, ¶ 101, quoting *State v. Woods*, 48 Ohio St.2d 127 (1976), paragraph one of the syllabus, *judgment vacated on other grounds*, 438 U.S. 910 (1978). " '[S]ubstantial step' " is defined as conduct that is " 'strongly corroborative of the actor's criminal purpose.' " *Dean* at ¶ 175, quoting *Woods* at paragraph one of the syllabus.

{¶ 28} R.C. 2911.12 defines burglary, in pertinent part:

> (A) No person, by force, stealth, or deception, shall do any of the following:
>
> * * *
>
> (2) Trespass in an occupied structure or in a separately secured or separately occupied portion of an occupied structure that is a permanent or temporary habitation of any person when any person other than an accomplice of the offender is present or likely to be present, with purpose to commit in the habitation any criminal offense.

{¶ 29} It is well-established law in Ohio that the testimony of a sole witness, if believed, is sufficient to support a conviction. *State v. Strong*, 10th Dist. No. 09AP-874, 2011-Ohio-1024, ¶ 42. In a sufficiency of the evidence analysis, "[t]he court essentially assumes the state's witnesses testified truthfully and determines whether that testimony satisfies each element of the crime." *State v. Davis*, 10th Dist. No. 18AP-921, 2019-Ohio-4692, ¶ 38, citing *State v. Bankston*, 10th Dist. No. 08AP-668, 2009-Ohio-754, ¶ 4.

{¶ 30} Here, J.S. testified that on August 19, 2019, appellant called her stating that he was coming over with a firearm, and he would "show [her] how to use it." (Tr. at 66.) Appellant also told J.S. he was going to "drag [her] out of the apartment." (Tr. at 66.) Vanfossan testified that appellant acknowledged going over to J.S.'s residence. (Tr. at 20.) The evidence shows that appellant took a substantial step in a course of conduct planned to

result in the commission of a burglary by repeatedly striking the door and attempting to enter the home through the window. This is supported by J.S.'s video, testimony as to the damage to her window, and corroborated by the testimony of law enforcement. Given the statements by appellant to J.S. as to his intention of dragging her from the apartment and bringing over a firearm, the evidence corroborates appellant's purpose to enter J.S.'s residence to commit a criminal offense. The most apparent of which include domestic violence, assault, or kidnapping. Viewing the evidence in a light most favorable to appellee, as required under sufficiency of the evidence analysis, appellee has presented sufficient evidence that appellant had the requisite purpose to commit a criminal offense in the victim's residence.

{¶ 31} We are also not persuaded that appellant's conviction was against the manifest weight of the evidence. J.S. provided a full account of her previous relationship with appellant, his communication on August 19, 2019, and his efforts to enter J.S.'s home. J.S. testified that appellant stated he was bringing over a gun. J.S. was aware that appellant had access to firearms because he would go to the shooting range. On the night in question, J.S.'s statement that appellant tried to enter through the window is supported by Castell and Covey's observation of the damaged window that was visibly "bowed out." (Tr. at 17, 73.) The video evidence also corroborates J.S.'s testimony of appellant's efforts to enter the residence.

{¶ 32} When considering a manifest weight of the evidence argument, this court is able to consider the credibility of the witnesses. *State v. Cattledge*, 10th Dist. No. 10AP-105, 2010-Ohio-4953, ¶ 6. In our review, however, we are guided by the presumption that the trier of fact, the trial court in this case, " 'is best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony.' " *Id.*, quoting *Seasons Coal Co. v. Cleveland*, 10 Ohio St.3d 77, 80 (1984). Therefore, we afford great deference to the trial court's determination of witness credibility. *State v. Redman*, 10th Dist. No. 10AP-654, 2011-Ohio-1894, ¶ 26, citing *State v. Jennings*, 10th Dist. No. 09AP-70, 2009-Ohio-6840, ¶ 55. Here, the trial court found J.S.'s testimony was credible and supported in large part by the video and testimony from law enforcement. Given these facts, we cannot say that the trial court lost its way or created a manifest miscarriage of justice in finding appellant guilty of attempted

burglary.   Based on the foregoing, appellant's conviction was not against the manifest weight of the evidence.

{¶ 33} Appellant's first and second assignments of error are overruled.

## IV.  CONCLUSION

{¶ 34} Having overruled appellant's two assignments of error, we affirm the judgment of the Franklin County Court of Common Pleas.

*Judgment affirmed.*

DORRIAN, P.J. and KLATT, J., concur.

_____